ROBERT C. HAWLEY v. THE KANSAS & TEXAS COAL COMPANY *et al.*

1. COAL COMPANY—*Contract with Employé, Construed.*  Where a person, by a parol agreement, is employed by a coal company to carry on and conduct its business at a particular place, but for no definite period of time, and his compensation is to be $125 per month and one-third of the net profits of the business, and nothing is said about real estate, and the coal company purchases real estate upon which to locate its coal yard, and its coal yard is located upon such real estate, and a large loss occurs in carrying on the coal business, but the real estate advances in value to an amount greater than the loss in the coal business, *held,* under the agreement and the circumstances of this case that the employé is not entitled to any portion of the enhanced value of the real estate.

2. ———— *Illegal Contract.*  Where a person is engaged in the business of dealing in and furnishing railroad piles, and the railroad company over whose railroad he transports the same has a fixed rate or price for the transportation of such property, but it has fa-

38 — 48 KAS.

vored customers for whom it will transport such property at a lower rate, by first charging the full price and afterward when the transportation is completed paying back a certain proportion thereof as a rebate, and the owner of the piles procures them, by an agreement with a favored customer, to be transported in the name of such favored customer, who afterward receives the rebate, *held*, that the whole transaction is in violation of law and public policy, and the owner of the piles who procured them to be so transported cannot afterward recover the amount of the rebate from the favored customer.

*Error from Shawnee District Court.*

THE opinion states the material facts. Judgment for the defendant *Companies,* at the April term, 1889. The plaintiff, *Hawley*, brings the case to this court.

*Johnson, Martin & Keeler,* for plaintiff in error.

*Gleed & Gleed,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Shawnee county on March 13, 1888, by Robert C. Hawley against the Kansas & Texas Coal Company and the Rogers Coal Company, in which action the plaintiff set forth two causes of action, or two supposed causes of action. The case was tried before the court and a jury, and at the close of the evidence on the part of the plaintiff the defendants demurred thereto upon the ground that it did not prove any cause of action, and the court sustained the demurrer, and rendered judgment in favor of the defendants and against the plaintiff for costs; and the plaintiff, as plaintiff in error, brings the case to this court for review.

The plaintiff's evidence was principally his own testimony, and, as to the first cause of action, it tended to prove as follows: About February, 1885, the plaintiff resided in Springfield, Mo. The Rogers Coal Company, through its president, B. F. Hobart, who resided at the same place, by a parol agreement employed the plaintiff to organize and conduct a branch of its business in the city of Topeka, Kas.,

and agreed to pay him for his services $125 per month and one-third of the net profits of its business at that place. Soon afterward the business was started in Topeka, and it was conducted by the plaintiff for the company and its successor, the Kansas & Texas Coal Company, up to May 1, 1887, when the plaintiff quit doing business for the company. He was paid regularly $125 per month during all the time that he was in the company's service, the aggregate amount paid him being $3,375; but there were no profits in the business to be divided, but, on the contrary, there was a loss amounting in the aggregate to $8,447.62. The company at the beginning purchased real estate for a coal yard, which real estate was afterward and in the fall of 1886 taken from the company by a railroad company, upon which real estate the coal company realized a profit of about $5,750. Immediately afterward the coal company purchased other real estate for a coal yard, the title to which was taken in the name of E. B. Loveland, its vice-president, which real estate the company, or its vice-president, still owns so far as is shown. But such real estate has so advanced in value that, taking all the profits of the company upon its transactions in real estate, they more than cover all the losses which the company sustained in carrying on its coal business; and if the business for which the plaintiff was employed included the company's transactions in real estate, and if the plaintiff is entitled to one-third of the net profits of all the company's transactions in real estate as well as in its coal business, then the plaintiff will be entitled to recover something on his first alleged cause of action; but if the company's transactions in real estate are not to be considered as a part of its business for the carrying on of which the plaintiff was employed, then he is not entitled to recover anything on his first alleged cause of action.

It was the opinion of the court below upon the evidence, and it is the opinion of this court, that the company's transactions in real estate have nothing to do with its employment of the plaintiff; and for the following reasons: The contract of employment was wholly in parol. The employment was

not for any definite period of time, nor for any considerable time. Nothing was said in the contract concerning real estate. It was not known at the time whether the land upon which the company's coal yard would afterward be located would be leased or purchased, nor whether it would be wanted for any considerable length of time. In estimating profits and losses, interest at the rate of 10 per cent. per annum was to be considered for all money invested in the coal business, but no provision was made for allowing interest upon any money invested in real estate. The plaintiff was to be paid monthly, and the relations which were to exist between the plaintiff and the coal company could be terminated at any time by either party. No provision was made in the contract for estimating or determining what the profits might be upon any real estate which might be purchased or owned by the coal company; and when the company realized the profits of $5,750 upon the real estate which it first purchased, and which was afterward taken by the railroad company, and which profits it realized in cash several months before the plaintiff quit the company's employment, no suggestion was made by either party for a division of the profits. Besides, the plaintiff kept the books of the company at Topeka, and kept the accounts relating to the real estate and the improvements thereon separately from the accounts relating to the coal business. It seems that the claim for a division of the profits upon real estate was an afterthought, and that it did not occur to the plaintiff to claim any such profits until some time after he quit the employment of the coal company.

It is further claimed that the court below erred in sustaining the defendant's demurrer to the plaintiff's evidence introduced in support of his second alleged cause of action. This decision of the court below we think was correct, and probably for more than one reason; but as the plaintiff seems to suppose that the court below sustained the demurrer upon the one ground only, that the contract between the plaintiff and Hobart to procure the transportation of the plaintiff's railroad

*1. Coal company — contract with employe, construed.*

piles by a railroad company for a less amount than the railroad company charged others for like transportation was in violation of law and contrary to public policy, we shall decide this question upon the same ground. The transportation of these piles had nothing to do with the coal business. It would seem, from the testimony, that the railroad company had a regular rate or price for the transportation of piles, but that as to certain of its customers it would, in effect, transport them at a lower rate, and that this would be accomplished in the following manner: The full price would first be charged, and afterward a rebate would be allowed and paid back to its favored customer. The evidence would seem to show that the coal company was one of the railroad company's favored customers, and that the plaintiff entered into a contract with Hobart, in pursuance of which Hobart was to have the piles transported in the coal company's name, with the understanding and agreement that the railroad company should, after the payment of the full price for the transportation, and after the transportation had been completed, pay back to its favored customer, the coal company, the amount of the rebate, which amount Hobart, as its president, should afterward pay to the plaintiff. The plaintiff claims that, in pursuance of such a contract, transportation, and payment of rebate, the coal company actually received the amount of $414.19 as rebate, which it now refuses to pay to him. Now this whole transaction, taking the plaintiff's evidence as true, is, we think, in violation of law and of public policy. It is in violation of §§ 10 and 11 of chapter 124 of the Laws of 1883 (Gen. Stat. of 1889, ¶¶ 1333, 1334), which read as follows:

2. Illegal contract.

"SEC. 10. No railroad company shall charge, demand or receive from any person, company or corporation, for the transportation of any property or for any other service, a greater sum than it shall at the same time charge, demand or receive from any other person, company or corporation, for a like service from the same place, or upon like condition and under similar circumstances; and all concessions of rates, drawbacks, and contracts for special rates shall be open to and allowed all persons, companies and corporations alike;

nor shall it charge more for transporting freight from any point on its line than a fair and just proportion of the price it charges for the same kind of freight transported from any other point.

"SEC. 11. No railroad company shall charge, demand or receive from any person, company or corporation, an unreasonable price for the transportation of persons or property, or for the hauling or storing of freight, or for the use of its cars, or for any privilege or service afforded by it in the transaction of its business as a railroad company. And upon complaint in writing, made to the board of railroad commissioners, that an unreasonable price has been charged, such board shall investigate said complaint, and if sustained shall make a certificate under their seal, setting forth what is a reasonable charge for the service rendered, which shall be *prima facie* evidence of the matters therein stated."

If, however, any of this transportation was to be and was from one state into another, then the transportation was also in violation of the provisions of the interstate commerce act, which also provides that any such special rate or rebate is an unjust discrimination and unlawful, and shall be prohibted. (24 U. S. Stat. at Large, ch. 104, §§ 1, 2, 3.) It has been the uniform rule of this court, and indeed in all courts, to hold that contracts tainted with illegality are absolutely void; and certainly no person can be permitted to go into a court of justice with a demand founded only upon an illegal transaction in which he has been an active participant. Among the decisions of this court, see *Hinnen v. Newman*, 35 Kas. 709.

We think the decision of the court below upon the demurrer to the evidence is correct, and therefore its judgment will be affirmed.

All the Justices concurring.