## GOTTLIEB HINNEN v. SAMUEL NEWMAN.

1. ACTION, *Founded upon Illegal Transaction.* As a general rule, an action which grows out of and is founded upon an illegal transaction, where the plaintiff and defendant are in equal guilt, cannot be maintained.

2. FRAUD; *Parties Equally Culpable; No Cause of Action.* N. was employed by the executors of an estate to sell the property of the estate at public auction, and he entered into a secret agreement with H. to attend the sale and purchase certain horses belonging to the estate for him. In pursuance of the agreement, H. appeared at the sale, and without any notice to those interested in the estate, or to the bystanders, he bid in the horses for N., but in his own name, and paid for them with his own funds. Afterward, the horses came into the

possession of N.; and H., claiming the ownership, brings an action of replevin to recover the possession of them. *Held*, That the conduct of the parties in the purchase and sale of the horses, contravenes public policy and is illegal, and that as the plaintiff's right of action is founded solely on the illegal transaction, and as he is equally culpable with the defendant, he must fail.

*Error from Jackson District Court.*

ACTION by *Gottlieb Hinnen* to recover from *Samuel Newman* the possession of two horses alleged to be the property of the plaintiff, and to be unlawfully detained by the defendant. A trial was had at the November Term, 1884, without a jury, when the following findings of fact and law were made by the court:

FINDINGS OF FACT.

"1. On and before the 5th day of September, 1884, the property in controversy in this action was then the property of the estate of Samuel Horner, deceased.

"2. The defendant was employed by the executors of said Samuel Horner as auctioneer to sell said property, and, as such auctioneer, sold said property, on the 5th day of September, 1884.

"3. Prior to said public sale, the plaintiff entered into a secret agreement with the defendant to appear at said sale and bid in the property for him, the defendant.

"4. Plaintiff did appear at said sale, and did, as aforesaid, bid in said horses in controversy in his own name, but for the defendant; and he (plaintiff) paid to the executors of said last will and testament the amount of said bids.

"5. No notice was given to said executors, or to anyone interested in said estate, or to the bystanders, or to any other person, of the fact that defendant had requested the plaintiff to bid said property in for him, the defendant.

"6. In bidding in said property the plaintiff bid the same in in his own name; and the property was stricken off to him personally by the defendant, and was then and there delivered to him, said plaintiff, for the defendant, the defendant at the same time declaring that the property was sold to Gottlieb Hinnen.

"7. The plaintiff paid to the executors with his own funds the several amounts for which said horses were respectively

sold to him, and defendant has paid nothing for either of said horses.

"8. Before the commencement of this suit the plaintiff demanded of the defendant the delivery of the horses in controversy in this action to him, the plaintiff, which defendant refused to do; and defendant ever since that time, and up to the commencement of this action, has refused, and still refuses, to return the property in controversy to the plaintiff.

"9. The horse first described in the petition, to wit, one sorrel horse with white strip in forehead, about fifteen hands high, was, at the date of sale and at the commencement of this action, of the value of $60; and the other horse in said petition described was, at the date of said sale and at the commencement of this action, of the actual value of $20.

"10. The use of said horses since the 5th day of September, 1884, is worth $25.

"11. The executors of the estate of Samuel Horner, deceased, have made no objections to said sale so made to the plaintiff, and have never asked to have the same rescinded.

"12. The defendant, on the day succeeding the day of said sale, to wit, the 6th day of September, 1884, tendered payment to said plaintiff of the amount for which said property in controversy was sold.

"13. The terms of said sale were nine months' credit without interest, the purchaser giving note with approved security."

CONCLUSIONS OF LAW.

"1. The secret agreement made by plaintiff with defendant, whereby plaintiff was to act as agent for defendant in bidding off said horses for the benefit of defendant, was fraudulent and void, as against public policy.

"2. By reason of said agreement so made between plaintiff and defendant, being fraudulent and void, as against public policy, the defendant is entitled to a judgment for his costs herein."

In accordance with the foregoing findings of fact and conclusions of law, the court rendered judgment for costs in favor of the defendant. The plaintiff brings the case to this court.

*Hayden & Hayden*, for plaintiff in error.

*Lowell & Walker*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The foundation of the plaintiff's action is a pretended sale to him of the horses in controversy, at a public auction. The defendant, Samuel Newman, was employed by the executors of the estate of Samuel Horner, deceased, as an auctioneer to sell the property of the estate. Before the day set for the public auction, the plaintiff entered into a secret agreement with the defendant to attend the sale, and there purchase the horses in question for the defendant. In persuance of the agreement the plaintiff attended the sale, and without any notice to those interested in the estate, or to the bystanders, of his purpose, he bid in the property for the auctioneer, but in his own name. The horses having come into the possession of the defendant, the plaintiff now asks the court to assist him in reclaiming them.

The whole transaction between these parties contravenes public policy and is clearly illegal, and the general rule is that an action founded upon an illegal transaction, where the parties are *in pari delicto*, cannot be maintained. In all such cases the courts refuse to assist the parties to carry out or to reap the fruits of the illegal transaction, but will leave them in the condition in which they were found. In applying this principle, the supreme court of the United States has said:

"The law leaves the parties to such a contract as it found them. If either has sustained a loss by the bad faith of a *particeps criminis*, it is but a just infliction for premeditated and deeply-practiced fraud, which, when detected, deprives him of anticipated profits, and subjects him to unexpected losses. He must not expect that a judicial tribunal will degrade itself by the exertion of its powers by shifting the loss from the one to the other, or equalize the benefits or burdens which may have resulted by the violation of every principle of morals and of laws." (*Bartle v. Coleman*, 4 Pet. 184.)

Here, both of the parties before the court were directly concerned in the transaction. Together they secretly conspired to and did commit a wrong against others. The transaction tainted with illegality was voluntarily entered into and consum-

mated by them. There was no constraint upon the plaintiff compelling him to carry out the unlawful purpose, nor does any fact appear which affords him any excuse for his misconduct, or that would bring him within any of the exceptions to the rule that has been stated. He concedes that the transaction was illegal, but to escape the penalty which the law justly imposes upon a guilty participant, he says that the property was bid in in his own name, and paid for with his own funds, and he claims that his right of action is based on these facts rather than on the illegal transaction, and that he can make out his cause of action without the aid of that transaction. It is claimed that the true test for determining his right of recovery is by considering whether he can establish his case without the necessity of having recourse to the illegal transaction, and if so, he must prevail. · This test is applied for the only purpose of determining whether the parties before the court are *in pari delicto,* in which case they are remediless. (Broom's Legal Maxims, 645; *Holt v. Green,* 73 Pa. St. 198; Wait's Actions and Defenses, 64.) There is little necessity or room for the application of this test where the plaintiff and defendant are so obviously in equal fault as we have seen the parties are in this case. But if the test proposed is applicable, it will not avail the plaintiff. The only interest or right of possession which he has in the property is derived from the sale, which is confessedly illegal. To establish his case, he must show that he purchased the property at that sale, and he thereby brings the illegal transaction into the case. Both parties claim under that sale — the plaintiff because he bid in the property in his own name, and the defendant because it was bid in for him and not for the plaintiff. Neither of them can come into court with clean hands and ask anything under the fraudulent and illegal transaction. If the possession of the property was changed and the defendant were in court seeking to obtain possession of it, he would be refused assistance, although from the findings it appears that the property was purchased solely for him. He is in no better position

than the plaintiff, and would be entitled to no greater consideration. It has been said that—

"The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but is founded on general principles of policy which the defendant has the advantage of, contrary to the rule of justice as between him and the plaintiff—by accident, if I may so say. The principle of public policy is this: *Ex dolo malo non oritur actio.* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So, if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it, for where both are equally in fault, *potior est conditio defendentis.*" (*Holman v. Johnson*, 1 Cowp. 343.)

As the plaintiff's right of action grows out of and rests solely upon the illegal transaction, and as he is equally culpable with the defendant, he must fail. The judgment of the district court is right and just, and will be affirmed.

All the Justices concurring.