J. B. ANDERSON, APPELLANT, v. W. R. FULLER, ROBERT
MUGGE, S. J. DRAWDY AND B. M. BALBONTIN AS MEMBERS
OF THE BOARD OF COMMISSIONERS OF PUBLIC WORKS OF
THE CITY OF TAMPA, AND. GEORGE C. WARREN AND FRED
T. WARREN, APPELLEES.

MUNICIPAL LAW—AWARD OF CONTRACTS TO LOWEST
BIDDER—ILLEGAL PROVISIONS IN CONTRACTS FOR
PUBLIC WORKS—CITY NOT LIABLE FOR DAMAGES NEC-
ESSARILY CONSEQUENT TO EXECUTION OF PUBLIC
WORKS—TAX PAYER MAY ENJOIN PAYMENT OF PUBLIC
MONEY ON ILLEGAL CONTRACT.

1.  Where the charter or incorporating act requires the officers
    of a city to award contracts for public works to the lowest
    bidder, a contract made in violation of its requirements is
    illegal and void, and neither the municipality nor its sub-
    ordinate officers can make a binding contract for such
    work except in compliance with the requirements of the
    law.

2.  The intention of the law in requiring such contracts to be
    let or awarded to the lowest responsible bidder for the
    work, is to secure the public improvement at the lowest
    reasonable cost to the taxpayers. Therefore the incorpor-
    ation into the advertisement for bids, or into the specifi-
    cations of the work, upon which such bids are predicated,
    of illegal or unauthorized conditions or obligations upon
    the contractor, compliance with which on his part will
    necessarily and illegally increase the cost of the work, is
    not a letting of such contract to the lowest bidder, within
    the meaning of the law, and will render the contract illegal
    and void.

3.  When a municipal corporation confines itself within the
    limits of its power and jurisdiction it is not liable to an
    action for consequential damages to private property or
    persons (unless such liability is imposed by special con-
    stitutional provision or by statute), where the act com-

Anderson v. Fuller et al.—Syllabus.

plained of was done by it or its officers under and pursuant to authority conferred by a valid act of the legislature, and there has been no want of reasonable care or want of reasonable skill in the execution of the power, although the same act, if done without legislative sanction, would be actionable.

4. While municipalities may by ordinance grant to individuals and corporations the privilege of occupying the streets and public ways for lawful purposes, such as railroad tracks, poles, wires, gas and water pipes, such rights are at all times held in subordination to the superior rights of the public, and all necessary and desirable police ordinances, that are reasonable, may be enacted and enforced to protect the public health, safety and convenience, notwithstanding the same may interfere with legal franchise rights. Thus a water company placing its pipes in the streets under a franchise contract with the city, does so in subordination to the superior rights of the public, through its duly constituted municipal authorities, to construct sewers in the same streets, whenever and wherever the public interest demands; and if in consequence of the exercise of this right, the water company is compelled to relay its pipes, in the absence of unreasonable or malicious conduct, it has no cause of action against the corporation for reimbusement on account thereof. And the city in such case has no authority voluntarily to burden itself or its taxpayers with the payment of damages necessarily consequent upon the reasonably careful and skilful execution of its authorized public works.

5. The law is well settled that a taxpayer in a city can properly maintain a bill to restrain public officials of the city from paying out public moneys upon void and unauthorized contract.

This case was decided by Division B.

Appeal from the Circuit Court for Hillsborough County.

26 S. C.

STATEMENT.

On the 27th day of September, 1905, the appellant, alleging that he was a citizen and taxpayer upon real and personal property in the city of Tampa, Florida, filed his bill in equity in the Circuit Court of Hillsborough county against the appellees W. R. Fuller, Robert Mugge, S. J. Drawdy and B. M. Balbonton as members of the Board of Commissioners of Public Works of said city of Tampa and against the Appellees George C. Warren and Fred T. Warren, alleging therein, among other things, that the said Board of Commissioners of Public Works, being thereunto duly authorized published a notice calling for bids for furnishing the material and labor necessary to construct a sewerage system in certain streets, alleys and avenues of the said city of Tampa, a copy of which notice is attached as an exhibit to the bill. Said notice for bids refers to certain specifications in the hands of the engineer of the board that are to be made the basis of such bids, and a copy of such specifications is also attached as an exhibit to the bill. That on the 1st day of August, 1905, the defendants George C. Warren and Fred T. Warren submitted to and filed with the said Board of Commissioners of Public Works a bid for furnishing the material and the performance of the labor necessary to carry out the said contract; that afterwards in August, 1905, the said Board of Commissioners of Public Works accepted said bid of the said George C. and Fred T. Warren, and afterwards, on the 31st day of August, 1905, attempted to enter into various written contracts with the said Warrens for the carrying out of the work provided for in said plans and specifications and the bid made by them, the exact number of contracts so entered into being unknown to your orator, but alleges that all of said contracts were

identical in their provisions, except as to differences in the amounts bid on different streets as shown in their different bids. A copy of such contracts is attached as an exhibit to the bill. That said Warrens with whom the said contracts were so entered into, were not in fact the lowest responsible bidders for the said contract, but that there was submitted to and filed with said Board at the same time a bid on the part of Joseph E. and George W. Bryan as partners as Bryan & Company, which was in fact a lower bid than that of the said Warren and Warren by approximately the sum of six thousand dollars, and that said Bryan & Company are and were responsible bidders, able to carry out and perform the said contract, and that said Board of Commissioners were fully satisfied as to the responsibility of the said Bryan & Company, notwithstanding the fact that they awarded the contract to the said Warren & Warren; that said contracts entered into between the said Board of Commissioners of Public Works and the said Warren & Warren are upon their face utterly null and void, among other reasons for the reasons hereinafter mentioned;

(a) That the said contracts do not conform to the advertisement for bids and the plans and specifications therein referred to.

(b) That said contracts reserved to the said Board of Commissioners of Public Works the power to increase or diminish the work, to make any changes in the line, grade, plan, form, position, dimensions and material of the work, either before or after construction.

(c) That the said specifications required, and the said contracts provided that the contractor, at his own expense, should remove all gas pipes, water pipes and conduits forming an obstruction to the line or grade of the sewer.

(d) That said specifications required and the said contracts provided, that the contractor shall be responsible for all the damages to buildings, bridges, railroads, street car lines, pipes, culverts or other property on the line of the work and for all injury to gas or water pipes and for all waste of gas or water due to the execution of the work.

(e) That said contracts provided that the price bid by the said contractor should include the replacing of all water courses and drains, or proper re-arrangement and reconstruction of any drain, water pipe, gas pipe, telegraph, telephone or electric poles, pipes or any conduit of any nature or description which may be encountered and injured or which may interfere with the line or grade of the work, also the maintaining of travel over any railroad or street car line which may be liable to obstruction by reason of said work, and the proper repair of any injury to the same.

(f) That said specifications required, and the said contracts provided, that the contractor should assume liability for all damages occasioned by doing the work therein provided.

(g) That in and by the said contracts the said Board of Commissioners abdicated their functions in favor of the city engineer and invested him with powers and duties not authorized by law.

(h) That the said contracts and the specifications made a part thereof constituted an unlawful delegation of the authority of the Board of Commissioners of Public Works in respect to duties imposed upon them by law, and incapable of delegation.

(i) That the notice calling for bids by requiring separate bids on each street violated the provision of the city charter of said city which requires all contracts to be let to the lowest responsible bidder.

(j) That said specifications upon which bids were called for did not sufficiently apprise bidders of the nature, extent and character of the work so as to comply with the city charter requiring all contracts to bet let to the lowest responsible bidder.

(k) That the said contracts are illegal and void.

That the said city of Tampa is not itself the owner of any gas or water pipes in the street of said city, or of any telegraph, telephone or electric poles, pipes or conduits of any nature, railroad or street car line operated within the city of Tampa, and that all of the same are owned by private corporations doing business in the city of Tampa under franchises or licenses from said city, and that said city has no power or authority, either directly or indirectly to appropriate money of the city or impose an expense on the taxpeyers of the city for the benefit of the said private corporations or any of them, all of which hold their franchises or licenses subject to the power of the city to require the construction of a sewerage system in the streets of the said city in the interest of the public health of said city, and that some of the instruments or agencies of the said private corporations will be encountered, and that the installment of the said sewerage system will render it necessary to remove or change the same in the performance of the said contracts.

That said contracts are further illegal and void for the reason that in the proposed form of agreement furnished by the said Board of Commissioners of Public Works to some or all of the bidders on the said contract as a basis upon which bids should be submitted, and particularly to the said firm of Bryan & Company there was included a clause in the following words: "Payments for the above work under this contract may be made with cash or certificates of indebtedness for paving and sewers as the

Board of Public Works may elect," while in the said con-
tracts as entered into in writing and executed by the said
Board of Commissioners of Public Works and the said
Warren and Warren there is no such clause or provision.
That all of the said contracts for doing the entire work
specified in the said advertisement have been executed
by the said Board of Public Works and the said Warren
and Warren, and that your orator is informed and be-
lieves that the said Warren and Warren are now prepar-
ing to enter upon the performance of the said contract
and if they are permitted to do so, and the said board is
permitted to pay out moneys under the said contract, the
moneys of the said city will be illegally diverted to a pur-
pose not authorized by law, and an illegal burden thereby
imposed upon the taxpayers of said city.

The prayers of the bill were that the said contracts and
each of them separately and as an entirety be decreed to
be null and void and to have no binding force or obliga-
tion upon the city of Tampa or the officers thereof. That
the defendants and each and every one of them, their
agents, servants and employees be enjoined and restrained
from carrying out the terms of the said contracts and
each of them, or attempting to enforce them or either of
them in any manner, shape or form, and particularly from
paying out or attempting to pay out any moneys thereun-
der to the said Warren and Warren or to any one in their
behalf. That if any moneys have been heretofore or shall
be hereafter paid out to the said Warren and Warren or
either of them or to anyone in their behalf on account of
the said alleged contracts, an accounting shall be taken
thereof by and under the direction of the court, and that
the said defendants W. R. Fuller, Robert Mugge, S. J.
Drawdy and B M Balbontin be decreed to restore and
pay to the city of Tampa any and all moneys so unlaw-

fully diverted by them. And for a temporary injunction for subpoena and for general relief.

The defendants answered the bill admitting all of the material averments thereof as to the terms and provisions of the advertisement for bids for said work and as to the terms of the specifications for such work that were the basis for the bids, and as to the terms and provisions of the contracts entered into for such work, but allege by way of demurrer that such averments of the bill, if true, do not affect the validity of such contracts. They deny that Warren and Warren were not the lowest responsible bidders, and deny that the bid of Bryan & Company was lower than that of Warren and Warren. The answers seek to avoid the allegation of the bill that said contracts and specifications for the work on which they are based unlawfully obligate the contractors under the terms of their bid to remove and replace at their cost all water pipes, gas pipes, telegraph and telephone and electric light poles, pipes and conduits, and street railway tracks that may come or stand in the way of laying said sewers, by alleging that none of such things were as a matter of fact in the way of such sewers as planned to be laid, and none thereof would in fact have to be moved and replaced in consequence of the laying of said sewers. They deny that said Board of Public Works in and by said contracts abdicated its functions or illegally delegated its functions and powers to the city engineer in the matter of constructing such sewers, or thereby clothed him with duties not authorized by law, or that were exclusively to be performed by said board. Said answers further seek to avoid the allegations of the bill to the effect, that said contracts illegally impose the burden directly upon the contractor and indirectly upon the city of the cost of the removal and replacement of all telegraph, telephone and

electric light poles, pipes and conduits, and gas and water pipes, drains and conduits, street car tracks, &c., that may come within the line of laying said sewers, by averring that though said provisions were contained in said specifications and contracts based thereon, yet it meant nothing as it had always been and was so understood that notwithstanding such provisions were in said contracts, yet the public authorities of said city uniformly construed it, and the gas, water, electric light, street railway and telephone companies in said city uniformly construed it to the effect that whatever removals or re-arrangements were necessary to be made by the said respective private corporations in consequence of sewerage work were always to be made and at the expense of the corporation so affected, and not at the expense of the city contractor or the city of Tampa, and that such has been the universal construction and practice since 1897, and up to the present time, the contracts in each instance since 1897 having been the same as these contracts that are complained of. The separate answers of the defendants Warren and Warren were practically the same as that of the Board of Public Works. Upon the bill with its exhibits, answers and *ex parte* affidavits filed on behalf of the defendants sustaining the averments of fact in their answers, application was made by the complainant to the Circuit Judge for a temporary injunction as prayed in the bill. After argument the application was denied by an order made December 30th, 1905, and from this order denying the injunction the complainant below has taken his appeal to this court.

*Macfarlane & Glen* and *John P. Wall,* for Appellant.

*Sparkman & Carter, Peter O. Knight* and *C. C. Whitaker,* for Appellees.

TAYLOR, J., *(after stating the facts.)* Chapter 5363 Laws of 1903, provides for the election by the people of the city of Tampa of a board of commissioners of public works for said city from among the registered voters who are freeholders. By section 21 of this act such board is given exclusive power and control over the construction and repairing of all sewers. By section 24 of said act it is empowered to employ an engineer and such other employees, officials and assistants as may be found necessary. This section also provides that the contracts made by this board shall be made in the name of the city of Tampa, and that any improvements which shall involve an expenditure of more than three hundred dollars shall only be let or made after advertisement thereof, and shall be let to the lowest responsible bidder therefor, upon such terms and secured by such bond as the board may require. Section 28 of said act provides that whenever any sewer or drain shall have been heretofore or may hereafter be constructed or repaired in said city the city council shall, as soon as the cost of such improvement shall have been certified to them by the commissioners of public works, assess against the abutting property two-thirds of the cost of such improvement in proportion to the frontage of such abutting property on said street, alley, park or highway so improved. Section 29 of said act provides that all such assessments shall constitute a prior lien to all other liens except taxes and those for the construction of side walks, with which liens they shall have equal dignity upon the real estate assessed. Section 30 of said act provides that when at any time the city council shall decide to construct or repair any sewer such council shall pass a resolution or ordinance ordering the same done, and thereupon the commissioners of public works shall advertise for bids for making said improve-

ments. Section 31 of the act provides for the issuance by the city council of certificates of indebtedness for the amounts of the assessments against the abutting property, a separate certificate to be issued against each tract of land assessed containing a description of such land, the amount of the assessment, together with the general nature of the improvement, and shall be made payable to bearer in one, two and three years in equal annual installments with interest to be fixed by the city council at a rate not greater than eight per cent per annum payable annually from the date of the issuance of such certificate.

The rule is well settled that where the charter or incorporating act requires the officers of a city to award contracts for public works to the lowest bidder, a contract made in violation of its requirements is illegal and void, and that neither the municipality nor its subordinate officers can make a binding contract for such work except in compliance with the requirements of the law. 1 Dill. on Mun. Corp. (4th ed.) Section 466; Fulton v. City of Lincoln. 9 Neb. 358, 2 N. W. Rep. 724; Brady v. Mayor of City of New York, 20 N Y. 312; Nash v. City of St Paul, 8 Minn. 172; Maxwell v. Board of Supervisors, &c., 53 Cal. 389. The purpose and intent of the law in requiring such contracts to be let or awarded to the lowest responsible bidder for the work, is to secure the public improvement at the lowest reasonable cost to the taxpayers. Therefore the incorporation into the advertisement for such bids, or into the specifications for the work upon which such bids are predicated, of illegal or unauthorized conditions or obligations upon the contractor, compliance with which on his part will necessarily and illegally increase the cost of the work, is not a letting of such contract to the lowest bidder and will render the contract illegal and void. California Imp. Co. v. Reynolds, 123

Cal. 88. 55 Pac. Rep 802; Stansbury v. White, 121 Cal. 433, 53 Pac. Rep. 940. In the published notice for bids for the performance of the public work involved herein bidders were referred to the office of the engineer of the board of public works for spcifications of the work and materials to be used therein. In the specifications thus referred to are the following provisions: "In digging about water pipes, gas pipes, and sewer or drain pipes, workmen must exercise special care. and such pipes shall be properly supported on timbers or chains, and the cost of such work and of repairs made necessary by injury to said pipes shall be paid by the contractor, and is included in the price bid for the sewer. When such pipes or conduits form an obstruction to the line or grade of the sewer the contractor shall, at his own cost and in the manner prescribed by the engineer, make such removals, alterations, or re-arrangements as may be required by the engineer."

"The contractor shall be responsible for all damages to buildings, bridges, railroads, street car lines, culverts or other property on the line of the work, and shall replace and make good all macadam or other pavement, cross-walks, &c., disturbed during the progress or in consequence of construction. The contractor shall be responsible for all injury to gas or water pipes and for all waste of gas or water due to the execution of the work. The contractor shall provide for the uninterrupted flow through all water courses and drainage ways in the line of the work."

"The prices bid shall include * * * the relaying of all payments and cross-walks, the protection and repairing of all gas pipes, water pipes, sewers, drains and other conduits."

The contracts entered into by the board with the defen-

dants Warren and Warren in pursuance of these specifica-
tions and of their bids based thereon contained the fol-
lowing provision, in consonace with such specifications
but going still further, *viz:* "And the party of the sec-
ond part (the contractor) further agrees that the prices
above named shall include the cost of * * * the replac-
ing of all water courses and drains, the proper rearrange-
ment and reconstruction of any drain, water pipe, gas
pipe, telegraph, telephone or electric light poles, or pipe
or conduit of any nature or description which may be en-
countered and injured, or which may interfere with the
line or grade of the work under this contract; also the
maintaining of travel over any railroad or street car line
which may be liable to obstruction by reason of said work,
and the proper repairing of any injury to same."

Another rule well settled in the law of municipal cor-
porations is that such a corporation, when it confines it-
self within the limits of its power and jurisdiction is not
liable to an action for consequential damages to private
property or persons (unless it be given by special consti-
tutional provision or by statute) where the act complained
of was done by it or its officers under and pursuant to au-
thority conferred by a valid act of the legislature, and
there has been no want of reasonable care or want of rea-
sonable skill in the execution of the power, although the
same act, if done without legislative sanction, would be
actionable.   2 Dill. Mun. Corp. (4th ed.) Sec. 987, *et seq.*
And while municipalities may by ordinance grant to indi-
viduals and corporations the privilege of  occupying the
streets and public ways for lawful purposes, such as rail-
road tracks, poles, wires, gas and water pipes, such rights
are at all times held in subordination  to the  superior
rights of the public, and all necessary and desirable police
ordinances, that are reasonable, may be enacted and en-

forced to protect the public health, safety and convenience, notwithstanding the same may interfere with legal franchise rights. A water company placing its pipes in the streets under a franchise contract with the city, does so in subordination to the superior rights of the public, through its duly constituted municipal authorities, to construct sewers in the same streets, whenever and whereever the public interest demands; and if in consequence of the exercise of this right, the water company is compelled to relay its pipes, in the absence of unreasonable or malicious conduct, it has no cause of action against the corporation for reimbursements on account thereof. McQuillin Mun. Ord. Sec. 521; National Water Works Co. v. City of Kansas, 28 Fed. Rep. 921; Kirby v. Citizens Ry. Co., 48 Md. 168; Elliott on Roads and Streets, Sec. 476; New Orleans Gas Co. v. Drainage Com., 197 U. S. 453. The city of Tampa was, therefore, not authorized directly or indirectly to burden itself or its citizens with the cost of removing and replacing of the water pipes, gas pipes, telegraph, telephone and electric light poles, drains or conduits or railway tracks that might necessarily have been interfered with in laying its sewers in the streets. And that these contracts did indirectly undertake to cast such burden upon the city there can be no doubt, since the bidders for the work, being advised in advance that they would be required to bear the cost of such removal and replacement, would increase their bids sufficiently to cover such cost, thereby casting an unauthorized and illegal burden upon the taxpayers, and defeating the purpose and object of the law in having the contracts for such works awarded to the lowest responsible bidder. These provisions in these contracts, and in the specifications of the work upon which the bids for the contracts were submitted, requiring the contractors at their cost to remove

and replace all water and gas pipes, telephone, telegraph and electric light poles, pipes, drains and conduits and all railway tracks that interfered with such sewers, go to the vitals of such contracts, and render them null and void upon their face; particularly is this true when the city is authorized by its charter to assess the cost of such work against the abutting property. Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 99 N. W. Rep. 603; Inge v. Board of Public Works, 135 Ala. 187, 33 South. Rep. 678; Colwell v. City of Waterbury, 74 Conn. 568, 51 Atl. Rep. 530, S. C. 57 L. R. A. 218. On the general subject see Diamond v. City of Mankato, 89 Minn. 48, 93 N. W. Rep. 911. That the complainant as a taxpayer in said city can properly maintain the bill filed to restrain the paying out of public moneys upon void and unauthorized contracts there can be no question. Frame v. Felix, 167 Pa. St. 47, 31 Atl. Rep. 375, S. C. 27 L. R. A. 802; City of Bluffton v. Miller, 33 Ind. App. 521, 70 N. E. Rep. 989; Peck v. Spencer, 26 Fla. 23, South. Rep. 642.

There are numerous other grounds of objection urged against the contracts involved herein, but as the objection discussed is fatal to the validity of such contracts it becomes unnecessary for us to pass upon the others.

It follows from what has been said that the Circuit Judge erred in denying the complainant's application for injunction. The order appealed from is, therefore, hereby reversed at the cost of the appellees and the cause remanded with directions to grant the injunction as prayed for in the bill.

HOCKER and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.