TUCKER SAVAGE, *Appellant, v.* CITY OF TAMPA, *et al, Appellees.*

1.  Chapter 6403 Laws of 1911, limits the amount of bonds to be issued by the City of Tampa for the construction of a bridge, and not the costs of the bridge.

2.  An offer of a street railway company using a bridge to contribute a sum to its contsruction is not a mere gratuity.

3.  A municipality, having power to contract for a specific purpose may safeguard itself in the contract against unforeseen conditions that may arise.

4.  A municipality in a building contract may provide that some third person shall determine the amount and quality of the work before payment be demandable.

5.  A municipality may require a contractor with it, to take ordinary precautions against injury to others and to indemnify it against such injury through his negligence.

Appealed from the Circuit Court for Hillsborough County.

The facts in the case are stated in the opinion of the Court.

*Sparkman & Carter* and *Wall & McKay*, for Appellant;

*G. E. Mabry*, for Appellees.

COCKRELL, J.—This is an appeal from a decree dismissing a bill filed by a taxpayer to enjoin the City of Tampa and its Board of Commissioners of Public Works from entering into a certain contract with H. C. Edwards for the construction of a bridge across the Hillsborough River at LaFayette Street in said city.

The first and chief insistance against the validity of the contract is that the amount of this contract together with other payments of the city made or to be made are $34,000 in excess of $190,000, and thus beyond the legislative limitation as contained in Chapter 6403 Laws of 1911. A reading of the cited act renders it clear that the limitation refers to the power to issue bonds, and not to the cost of the bridge. Moreover the bill discloses that the Tampa Electric Company, operating a system of street cars upon this street over the river has agreed to donate fifty thousand dollars to be used for the proposed bridge, and in view of the potential power in the Legislature or the city to compel an equitable division of the costs of the bridge as between the city and the street car company, we cannot look upon the proposed donation as a mere offer of a gratuity that may be withdrawn at pleasure.

There are some minor objections to the form of the

specifications.   There being some uncertainty as to the nature of the foundation soil upon which the bridge is to rest, provision was made whereby there might be necessity to alter the plans, this provision took the form of asking for bids on units of work and material.   The powers of municipalities must be given a reasonable workable interpretation and they must in some degree be permitted to safeguard themselves and their credit as do other corporations or individuals, and this provision does not destroy the contract.

It is quite usual in building contracts, and a proper protection in behalf of a municipality to provide that some agreed person determine the amount and quality of work done before payment is to be made.   This provision does not prevent the Board of Commissioners of Public Works also making an examination before payment.

It is also usual and proper to provide that the contractor take the customary precautions against injury to passers by and to indemnify and save harmless the municipality against injuries to persons or property through the contractor's negligence.   In the cited case of Anderson v. Fuller, 51 Fla. 380, 41 South. Rep. 684, the contract was condemned because the city, not the contractor, assumed this liability.

The contract seems to us to have been carefully drawn, without suggestion of collusion or fraud, and to be within the chartered powers of the City of Tampa.

The decree is affirmed.

WHITFIELD, C. J., and TAYLOR, SHACKLEFORD and HOCKER, J. J., concur.