ROBERT G. LASSITER & COMPANY, a corporation, *Appellant*, v. JOHN A. TAYLOR, *Appellee.*

En Banc.

Opinion filed April 21, 1930.

*Shutts & Bowen* and *Lawrence & Kash,* for Appellant;

*L'Engle & Shands* and *R. R. Rhudy,* for Appellee.

DAVIS, Commissioner:

This case is here upon appeal from an order overruling a demurrer to the bill of complainant of the appellee, a taxpayer, and granting a temporary injunction restraining the City of Sebring from making further payments to the appellant on a contract which appellant had with the said city for making certain street improvements.

Stated succinctly, in the language of appellant, in its brief, the application for injunctive relief is based upon the following facts:

1. That the contract, after being let upon competitive bidding, was subsequently modified to provide for an entirely different type of work at a different price, without submitting the contract for the work as modified to competitive bids.

2. That the work was improperly and unskilfully done, and the city should have been required to secure an abatement in price to the extent that the contract was unperformed, in settling with the contractor.

No question is raised as to the general power of the city to make the improvement or as to the legality of the assessments against abutting owners therefor. Nor has the legality of the proceedings culminating in the making of the contract been questioned.

The appellant, in response to a notice to bidders, submitted two bids; one for concrete pavement according to the plans and specifications filed with the city clerk or city engineer, and one for "Densite" pavement according to specifications accompanying the bid. The contract was awarded to appellant for concrete pavement as called for by the plans and specifications prepared by the city, and it is alleged in substance that several weeks after advertising for bids and letting the contract to the appellant, the said Robert G. Lassiter & Company, for a concrete pavement with curb and gutters "in accordance with plans and specifications on file at the office of the city clerk or the city engineer," the city council adopted a resolution changing the type of pavement from concrete as shown by the specifications to a "Densite" pavement with a "five inch Densite base and 1½ inch asphalt wearing surface," at a saving to the city, but to the great advantage of, and more profitable to, the appellant. This change was made without calling for or receiving competitive bids. According to the plans and specifications on file at the office of

the city clerk or city engineer, the concrete was to be known as a 1:2:3 mixture, that is, one part of Portland cement, two parts of sand of a specified fineness, and three parts of gravel or crushed stone of a specified quality.

The specification for "Densite" pavement called for a mixture of 1.75 bbls. of cement, the required amount of water and amorphous silica (from 6 to 12 pounds) and enough sand to make one cubic yard of concrete in place.

The bill further alleges that the contractor failed to perform the contract in the altered form in the manner therein required in a number of particulars, and that because of such noncompliance with the contract the pavement has cracked and broken and will rapidly deteriorate and become worthless; that the city has refused to pay the balance of the contract price, amounting to $56,000.00, unless the appellant secures the city against repair for a period of five years, and that the appellant and the city are about to enter into an arrangement, unless restrained, whereby the city will pay to the appellant the balance; that under and by virtue of Section 11 of Article 8 of the city charter, Chapter 11158, Laws of Florida, 1925, upon the completion of improvements the owners of property specially assessed for street improvements are to be repaid the difference in the assessment as originally made and approved and confirmed, and the actual cost of the improvements to be paid by special assessment as finally determined upon completion of the improvements; that the contractor had already received the reasonable worth of the work and that the city should be required to withhold a part of the contract price to indemnify it, and the abutting owners for defective performance of the contract; that if the city should pay the contractor the said sum of $56,-000.00, in consideration of the contractor agreeing to repair the street as aforesaid, the abutting owners, of which

appellee is one, will be assessed for repairs as distinguished from the original cost of the improvement and that the appellee requested the city council to resist the claim, but the city council refused to grant the request and has declared its intention of making settlement with the appellant.

Section 13 of Article 8 of the city charter (Chapter 11158, Laws of Florida, 1925) contains the following provision:

"The city council shall have exclusive power to make all public improvements and expenditures, by ordinances, but shall let all contracts for over two hundred ($200.00) dollars to the lowest responsible bidder."

The appellant concedes that this provision makes competitive bidding for construction of public improvements mandatory, but says that the complainant "does not show expressly or by inference that densite concrete is not a standard concrete pavement or is not of that class or was not understood by any other bidder to have been excluded or that any bidder failed to bid thereon by reason of the manner in which the specifications were worded."

The notice to bidders called for bids for concrete, brick, or bituminous pavement with necessary curbs, etc., "in accordance with plans and specifications on file at the office of the city clerk, or the city engineer," and did not call for bids for "Densite" concrete or any other pavement, whether standard or otherwise, equally as good as concrete, brick or bituminous pavement. While there was nothing in the notice to preclude the submission of proposals of other types of pavement, it put interested parties on notice of the kinds of pavement for which bids were desired, and prospective bidders of experience were

justified in concluding therefrom that bids for a character of pavement other than those mentioned would not be considered. The appellant being the lowest bidder, secured a contract for a concrete pavement of the character provided for in the plans and specifications. The appellee makes no complaint as to the awarding of that contract, but insists in effect that if the said contract was to be abandoned, the city could not make a new, altered or substituted contract, except upon competitive bids. The pavement that was put down was a materially different pavement from the one provided for in the original contract and for which bids were invited. The quoted provision of the charter being mandatory in its nature, any contract entered into by the city for construction work, other than the kind authorized by the original resolution adopted by the council, the plans and specifications for which were referred to in the notice to bidders as being on file at "the office of the city clerk or the city engineer," would have been in violation of the provision of the charter and therefor illegal and void. Anderson v. Fuller, 51 Fla. 380, 41 So. R. 684; Adolphus v. Baskin, 95 Fla. 603, 116 So. R. 225; 19 R. C. L. 1064-1071 (Sec. 357, note 18); 44 C. J. 326-8; Staebler v. Town of Anchorage, 186 Ky. 124, 216 So. W. R. 348; Inge v. Board of Public Works, 135 Ala. 187, 33 So. R. 678, 93 A. S. R. 20; Reams v. Cooley, 171 Cal. 150, 152 Pac. R. 293; Ann. Cas. 1917A, 1260; Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 99 N. W. R. 603, 106 A. S. R. 931; 28 Cyc. 1036; 2 Dillon Municipal Corporations, 5th Ed. Sec. 807; Manly Bldg. Co. v. Newton, 114 Ga. 245, 40 So. E. R. 274; Dolezal v. Bostick, 41 Okla. 743, 139 Pac. R. 964.

The city council, at the time the bids were opened and the original contract was awarded to the appellant, could not lawfully agree with appellant for the laying of a pave-

ment known as "Densite"; it follows that the city could not circumvent the charter provision by first entering into a legal contract for pavement "in accordance with plans and specifications on file" and later by agreement, change the contract to a different type of pavement or make a new contract. That would be doing indirectly what could not be done directly. 44 C. J. 326; Donnelly, The Law of Public Contracts, 220.

The intent of the charter provision, requiring such contracts to be let or awarded to the lowest bidder for the work, is to secure the best improvement at the lowest possible cost to the taxpayer and to prevent fraud, favoritism and extravagance in the expenditure of public funds. 44 C. J. 324-5; Anderson v. Fuller, *supra;* Inge v. Board of Public Works, *supra.*

The charter mandatorily required as a condition precedent to the making of the contract that it be let to the lowest responsible bidder. In cases where contract amounts to more than $200.00, Section 13, Article 8 of the city charter is a limitation, so to speak, upon the general power of the municipality to make contracts for public improvements. 3 McQuillin, Mun. Corps. 2620-1.

Mr. McQuillin in his work on Municipal Corporations (Vol. 3, p. 2565-6) says:

"If the charter or the statute applicable requires certain steps to be taken before making a contract, and it is *mandatory in terms,* a contract not made in conformity therewith is invalid, and ordinarily cannot be ratified, and usually there is no implied liability for the reasonable value of the property or services of which the municipality has had the benefit;"

(See also same volume, pages 2620, 2631, 2642 and 2752) and he cites many cases to sustain the text. The same

author says further (4th vol., p. 4125) that the settled rule is:

> "That persons contracting with a municipality to make improvements must, at their peril, inquire into the power of the municipality and its officers to make such contract." See also 3 McQuillin, Mun. Corp., pages 2565, 2628; Turney v. Bridgeport, 55 Conn. 412, 12 Atl. R. 520; Boston E. Co. v. Cambridge, 163 Mass. 64, 39 N. E. R. 787; Schumm v. Seymour, 24 N. J. Eq. 143; 44 C. J. 74.
>
> "That a taxpayer in a city 'can properly maintain the bill filed to restrain the paying out of public moneys upon void and unauthorized contracts, there can be no question'. Anderson v. Fuller, *supra*."

In Bell et al. v. Coachman, 69 Fla. 295, 68 So. R. 173, this Court reversed a decree dismissing a bill by taxpayers of Pinellas County to enjoin a special levy upon the taxable property of the county, for the construction of a jail, because the county commissioners failed to comply with the terms of the statute requiring the board to determine that it was necessary to erect such building. And in Jones v. Pinellas County, 81 Fla. 613, 88 So. R. 388, we have a case where the contractor sued the county for the construction of the jail referred to in Bell v. Coachman, *supra*. The contract being invalid, not "for a mere irregularity, but for a direct evasion of an express mandatory provision" of the statute, the case was tried on the common counts, and the trial resulted in a judgment for the county. This Court, in affirming the judgment said (text 620):

> "Even if the question of an implied liability was involved here; the promise being an express one in the form of a written contract and relied upon in sup-

port of the common counts as to the amount of damages alleged to have been sustained, it would have to be resolved against the plaintiff so far as the county is concerned, because the law does not imply a liability against a county where its county commissioners proceed in the matter in violation of the express mandatory provisions of the statute and the party seeking to enforce the liability is charged with the duty of ascertaining the legality of the proceedings. There is no implied authority in county commissioners to do something for the county which the statute expressly forbids. See 3 McQuillin's Mun. Corp., Sec. 1164; Secs. 1172-1181; Whiteside v. United States, 93 U. S. 247; Appleton Waterworks Co. v. City of Appleton, 132 Wis. 563, 113 N. W. R. 44; Edison Electric Co. v. City of Pasadena, 178 Fed. R. 425.''

In Anderson v. Fuller, *supra,* a citizen and taxpayer filed his bill to enjoin the enforcement of contracts for public improvements in the City of Tampa, under a statute containing a provision similar to the quoted provision of the charter of the City of Sebring, and the Court not only held that a contract made in violation of that requirement of the charter was illegal and void, but also that a taxpayer in the city could properly maintain a bill filed to restrain the paying out of public moneys upon void and unauthorized contracts. There can be no question about the principle last stated being applicable in that case, inasmuch as the bill for an injunction was filed before any benefits were received by the city. By applying the principles of law stated and applied in the case of Jones v. Pinellas County, *supra,* we can see no reason why appellee in the instant case should not have relief by injunction, though the pavement was down at the time of the filing of the bill of complaint.

We are, therefore, constrained to hold that the city council had no right to thwart the object and purpose of the charter provision requiring contracts for more than $200.00 to be let to the lowest responsible bidder and make, in practical effect, a new contract with the appellant for the "Densite" pavement; further, that such contract was illegal and void and that the court was not in error when it made the order restraining, until the further order of the court, the payment of the balance alleged to be due, and overruling the demurrer to the bill of complaint.

Our conclusions are not in conflict with the decision of this Court in Lainhart et al. v. Burr, et al., 49 Fla. 315, 38 So. R. 711, in which it appeared that the purchasing agent of Dade County purchased certain supplies for the county from a certain firm in which he and a county commissioner were partners, and certain other supplies from a firm in which one of the county commissioners had a partnership interest, and the Court held that the contracts were illegal, being opposed to public policy, though there was no statute in force prohibiting the making of such contracts. And while it is said in the opinion (text 326):

"If a public officer having power to purchase supplies, contracts with himself to supply them, the contract is void, no action can be maintained for the contract price, and even though the amount specified in such contract were audited and a warrant drawn to pay it, a court of equity will enjoin such payment at the suit of taxpayers;"

it nevertheless held (with what was stated to be the great weight of authority) that the party or parties supplying the goods had a right to recover what they had actually expended, or what the supplies were reasonably worth, which would not include any element of profit, if

no actual fraud was intended or perpetrated, and the supplies were *necessary* and *beneficial* to the county. In the opinion of the Court, it was proper to perpetually enjoin the payment of the then outstanding unpaid warrants, but in this connection, the Court said (text 332):

"In order that no misapprehension may arise, it may be well to state that the injunction against payment of outstanding warrants issued for supplies purchased from firms in which a commissioner was a member does not operate to prevent the commissioners from issuing other warrants in lieu thereof, to the parties who furnished the supplies for such amounts as may be found proper in accordance with the rules laid down above;"

that is, the *actual cost* of the supplies which were necessary and beneficial to the county, in the purchase of which no actual fraud was perpetrated; such cost not to exceed their reasonable market value. From which we deduce that it was the purpose of the Court to hold that the county was liable upon a legal implication where the supplies contracted for and which had been delivered and used, were necessary and beneficial to the county and the purchase of same was not tainted with fraud, even though the contract was void. The purchase of the supplies from firms in which county commissioners were interested was not made in violation of a provision of law that prohibited such purchases, but was contrary to public policy. In the instant case, the new, altered, modified or substituted contract was made in violation of a statute. The Court in the Lainhart v. Burr case, *supra*, doubtless had in mind the distinction that was drawn by the Court in City of Concordia v. Hagaman, et al., 1 Kan. A. 35, 41 Pac. R. 133, between a contract which is illegal because its execution

requires the performance of an immoral or unlawful act, or transgresses an express statutory prohibition, and one where the act to be performed is unlawful, because of the manner it was entered into, or because of incapacity to contract in either of the parties, where it was said:

"The first receives no aid or encouragement whatever from the courts on, the principle, '*Ex turpi causa non oritur actio.*' Of this character were the contracts in the following cases: Gerlach v. Skinner, 34 Kan. 89, 8 Pac. R. 257; Hinnen v. Newman, 35 Kan. 712; 12 Pac. R. 144; Bowman v. Phillips, 41 Kan. 579, 35 Pac. R. 230; Sheldon v. Pruessner, 52 Kan. 579, 35 Pac. R. 201; Yount v. Denning, 52 Kan. 629, 35 Pac. R. 207; Oscanyan v. Arms Co., 103 U. S. 261, cited in the preceding case. When the contract looks to doing of a lawful act but may be avoided by one of the parties to it because the other party at the time acted in a fiduciary capacity for the first, the rule is applied in order to avoid the possibility of reaping any undue advantage from the contract. When it has been executed without objection, and actual benefits have been received under it, all parties acting in entire good faith, the law is maintained and the ends of justice subserved by disregarding those parts of the express agreement where in advantage might have been taken, and allowing compensation merely for the reasonable value of the benefits received under it. Considerations of public policy do not require the doing of less than this. The defense of public policy has no element of punishment in it; nor is it allowed out of consideration for the defendant. It is upheld by the consideration which the law ever entertains for the protection of the public, and the settled policy of the courts to give no aid to the enforcement of contracts whose general

tendency is injurious to the public. Hence, the courts refuse all relief to one who asks compensation for the doing of an act which is conclusively presumed to be hurtful to public interests or morals. When, however, the thing accomplished is proper and beneficial, and not placed under the ban of any penal prohibitory enactment, the reason for the rule fails, and it should not be applied any further than is necessary for the public good. No rule which is applied for the prevention of wrong should be used to work injustice to either of two parties who have both been equally innocent of intentional illegality of wrongdoing. Principles based upon public policy fail in their object when used as instruments of wrong.''

We now have before us a case where the contract was made in violation of a mandatory provision of the charter, which requires such contracts to be let to the lowest responsible bidder. We quite agree with the Supreme Court of California, when it says:

''This then, is the undoubted rule, that, when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted rights growing out of it. And the reason is apparent; for to permit this would be for the law to aid in its own undoing. Says the Supreme Court of the United States in President, etc., v. Owens, 2 Pet. 527: 'No court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of the country. How can they become auxiliary to the consummation of violations of law? There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal.' And again the

same august tribunal, in Coppell v. Hall, 7 Wall. 542, says: 'Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection would be tainted with the vice of the original contract and void for the same reasons.

'' 'Where the contamination reaches it destroys. The principle to be extracted from all the cases is that the law will not lend its support to a claim founded on its own violation'.'' Berka v. Woodward, 125 Cal. 119, 57 Pac. 777, 779.

That no improper inferences may be drawn from this opinion, we might add that we are not deciding any question not herein discussed.

The decree of the lower court is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below should be, and the same is hereby affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.