137 So.2d 234 (1962)
ARMCO DRAINAGE AND METAL PRODUCTS, INC., Appellant,
v.
COUNTY OF PINELLAS, Florida, Appellee.
No. 2429.
District Court of Appeal of Florida. Second District.
February 2, 1962.
*235 Thomas M. Carney; Goldner, Carney & Marger, St. Petersburg, for appellant.
Page S. Jackson, St. Petersburg, for appellee.
ALLEN, Judge.
Appellant, plaintiff below, is appealing from a summary judgment which denied its motion for same and ordered that its complaint be dismissed with prejudice.
On December 12, 1957, defendant county, by its purchasing agent, entered into an agreement by telephone with plaintiff whereby defendant agreed to purchase certain fabricated goods from plaintiff. Thereafter, on December 16, 1957, the verbal telephone order was confirmed by three purchase orders, copies of which are attached to the complaint. The purchase orders were for $838.38, $182.28 and $570.36 respectively and total $1,582.92. The requirements of § 125.08, F.S.A., calling for advertisement for bids for purchases by a county in excess of $1,000 were not complied with.
According to the three purchase orders, the goods furnished pursuant thereto were pieces of galvanized corrugated metal of varying dimensions. Said purchase orders reflect the same dates but have different order numbers. The goods were delivered to defendant and subsequently used in various county projects. Plaintiff's demand for payment was formally denied by the Board of County Commissioners and this suit followed.
At the hearing on motion for summary judgment the parties stipulated essentially to the above. The lower court found that there existed no genuine issue of material fact in that the contract reflected by the three purchase orders was entered into without compliance by defendant county with the mandatory requirements of § 125.08, F.S.A., and therefore there could be no recovery against the defendant on said contract. Implicit in the judgment is a finding that the transaction as a whole constituted one single contract and not three separate contracts as contended by plaintiff. Under § 125.08, only purchases by a county in excess of $1,000 need be preceded by advertisement and bids. In this case, each purchase order reflects an amount under $1,000; therefore the three purchase orders in question must have been found to constitute not three separate contracts but one single contract.
The purchase orders show the material purchased to be galvanized corrugated metal pipe-arch cut to various lengths of the type and kind that were susceptible to competitive bidding. The lower court determined it was a purchase order exceeding $1,000; that there was, in effect, one purchase and not three contracts each of which was less than $1,000.
Charles S. Rhyne, in his excellent book on Municipal Law, (1957) states at page 262, § 10-6:
"Competitive bidding in the granting of municipal contracts is employed for the protection of the public to secure by competition among bidders, the best results at the lowest price, and to forestall fraud, favoritism and corruption in the making of contracts. In making its contracts a municipal corporation need not advertise for bids and let to the lowest bidder in the absence of a charter or statutory requirement; nor need it let to the lowest bidder if, in the absence of the statutory requirement, it adopts a policy of advertising for bids. Generally, however, municipal corporations are required by law to award contracts *236 in excess of a specified amount to the lowest responsible bidder.
"If competitive bidding is not only allowed but required by statute or charter, any contract awarded without competitive bidding is void and unenforceable. The same rule applies when a municipal ordinance requires competitive bidding. Accordingly, strict compliance with competitive bidding requirements is a condition precedent to the awarding of the contract. Generally speaking, it is up to the individual contractor to know whether or not the city must employ competitive bidding in awarding a particular contract, for he acts at his own peril since he is presumed to know the law. Thus, a contractor may not recover even on a quantum meruit basis, if the contract was let without compliance with mandatory competitive bidding requirements. The same rule applies to contracts which are void because of unlawful collusion among bidders."
As authority that a contract awarded without competitive bidding is void and unenforceable, Mr. Rhyne cites, among other cases, the Florida case of Anderson v. Fuller, 51 Fla. 380, 41 So. 684, 6 L.R.A., N.S., 1026 (1906).
In Anderson v. Fuller, supra, the Florida Supreme Court, in its opinion, said:
"The rule is well settled that, where the charter or incorporating act requires the officers of a city to award contracts for public works to the lowest bidder, a contract made in violation of its requirements is illegal and void, and that neither the municipality nor its subordinate officers can make a binding contract for such work except in compliance with the requirements of the law. 1 Dill. on Mun.Corp. (4th Ed.) § 466; Fulton v. City of Lincoln, 9 Neb. 358, 2 N.W. 724; Brady v. Mayor of City of New York, 20 N.Y. 312; Nash v. City of St. Paul, 8 Minn. 172 (Gil. 143); Maxwell v. Board of Supervisors, etc., 53 Cal. 389. The purpose and intent of the law in requiring such contracts to be let or awarded to the lowest responsible bidder for the work is to secure the public improvement at the lowest reasonable cost to the taxpayers. Therefore the incorporation into the advertisement for such bids, or into the specifications for the work upon which such bids are predicated, of illegal or unauthorized conditions or obligations upon the contractor, compliance with which on his part will necessarily and illegally increase the cost of the work, is not a letting of such contract to the lowest bidder and will render the contract illegal and void. * * *"
The Supreme Court of Florida in Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689, stated that even though a contract for public improvements in a city has been completed, if the contract is illegal and void because it was made in violation of a charter or incorporating act containing a provision for the letting of contracts in excess of a stated amount to the lowest responsible bidder, a taxpayer of the municipality may maintain a bill filed to restrain the paying out of public moneys upon such contract. The Court, in its opinion said:
"The intent of the charter provision, requiring such contracts to be let or awarded to the lowest bidder for the work, is to secure the best improvement at the lowest possible cost to the taxpayer and to prevent fraud, favoritism, and extravagance in the expenditure of public funds. 44 C.J. 324, 325; Anderson v. Fuller, supra; Inge v. Board of Public Works, supra [135 Ala. 187, 33 So. 678].
"The charter mandatorily required as a condition precedent to the making of the contract that it be let to the lowest responsible bidder. In cases where contract amounts to more than $200, section 13, article 8, of the city charter *237 is a limitation, so to speak, upon the general power of the municipality to make contracts for public improvements. 3 McQuillin, Mun.Corps. 2620, 2621.
"Mr. McQuillin, in his work on Municipal Corporations (volume 3, pp. 2565, 2566) says: `If the charter or the statute applicable requires certain steps to be taken before making a contract, and it is mandatory in terms, a contract not made in conformity therewith is invalid, and ordinarily cannot be ratified, and usually there is no implied liability for the reasonable value of the property or services of which the municipality has had the benefit.' * * *
* * * * * *
"We now have before us a case where the contract was made in violation of a mandatory provision of the charter, which requires such contracts to be let to the lowest responsible bidder. We quite agree with the Supreme Court of California [Berka v. Woodward, 125 Cal. 119, 57 P. 777], when It says: `This, then, is the undoubted rule, that, when a contract is expressly prohibited by law, no court of justice will entertain an action upon it, or upon any asserted rights growing out of it. And the reason is apparent; for to permit this would be for the law to aid in its own undoing. Says the supreme court of the United States in President, etc. [of Bank of United States] v. Owens, 2 Pet. 527 [7 L.Ed. 508]: "No court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of the country. * * *"'"
Florida Statutes 1959, § 125.08, F.S.A., provides:
"No contract shall be let by the board of county commissioners of any county having a population of more than thirty-nine thousand according to the last past federal census, for the working of any road or street, the construction or building of any bridge, the erecting or building of any house, nor shall any goods, supplies or materials for county purposes or use be purchased when the amount to be paid therefor by the county shall exceed one thousand dollars, unless notice thereof shall be advertised once each week for at least two weeks in some newspaper of general circulation in the county, calling for bids upon the work to be done or for the goods, supplies or materials to be purchased by the county, and in each such case the bid of the lowest responsible bidder shall be accepted, unless the county rejects all bids because the same are too high; * * *"
The appellant, in its brief, argues that the defendant was estopped to deny the propriety of the plaintiff's claim since the defendant ordered the goods, the purchase price for which was the claim sued upon; that the goods were delivered to the defendant and were used by it for the public purpose set out in the purchase orders; and that the price for the goods was the state contract price as defined in F.S. § 125.081, F.S.A. We find nothing in Florida Statutes, § 125.081, F.S.A., that would nullify the necessity for competitive bidding nor do the other facts set forth in the brief of the appellant estop the county in this action.
As was stated by the Supreme Court of Florida in Town of Boca Raton v. Raulerson, 108 Fla. 376, 146 So. 576, 577;
"* * * We subscribe that principle of law, and conclude that, if a sale is made in violation of section 7470, Compiled General Laws of Florida 1927, the same is void, and the town may recover the full amount paid. This rule may, at a glance, seem a harsh one, because under it the town would be allowed to keep what it needs and uses and escape payment therefor, but the statute is upon the books for all *238 to read and heed. It is a warning to those who become public officers that they may not take advantage of their position by dealing with themselves, and, being so warned, they enter upon such transactions at their peril. Should we apply in such instances the rule that recovery should be limited to the profit enjoyed from the transgression, it would open the way and extend the invitation to fraud as well as violation of the law. * * *" (Emphasis added.)
In the recent case of Schaal v. Race, Fla. App. 1961, 135 So.2d 252, we sustained the lower court in dismissing a complaint wherein the plaintiff was suing on an indebtedness incurred by the defendant in a political race and which showed on its face that the indebtedness was incurred contrary to the provisions of the Florida election laws. In the opinion we stated:
"It may seem an undue hardship upon the plaintiff to refuse him compensation for services rendered or to be rendered on behalf of the defendant in this case, but when we consider the purposes of the law violated by both the appellant and the appellee it would serve no purpose to pass such regulatory acts if parties could with impunity violate them."
In our opinion in Schaal v. Race, supra, we quoted from Pomeroy's Specific Performance of Contracts, 3d Edition, p. 651, § 286, Defense of Illegality Rests upon Reasons of Public Policy, as follows:
"`As has already been stated, courts set aside or refuse to enforce illegal contracts, in general, not from any regard for the objecting party, nor from a desire to protect his individual interests, but from reasons of public policy. Where two persons with equal knowledge and equally participating in the fault, have entered into an illegal agreement, and one of them has obtained by the other's voluntary act all the benefit of it for himself, his refusal to perform on his own part is, generally considered in itself alone, unjust and inequitable; but the law sustains him in this position, because it takes into account the interests of society and of the state, which demand the complete suppression of such agreements. The objection which prevails and avoids the illegal contract comes not from the individual litigant, but from the public at large who speak through the courts. Whenever, therefore, in a suit for specific performance, the illegality, not having been alleged in the pleadings, is disclosed for the first time by the evidence, the court will on its own motion pursue the investigation, and, if the fact is established refuse to enforce the agreement. * * *'"
In Wester v. Belote, 103 Fla. 976, 138 So. 721, the Florida Supreme Court said:
"That a contract made by public officers in violation of the statutes requiring them to be let pursuant to competitive bids, to the best responsible bidder, is absolutely void, and that no rights can be acquired thereunder by the contracting party, is beyond question in this jurisdiction. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689. And that payments under such a contract will be enjoined at the suit of a citizen and taxpayer of the affected county is also not to be denied under the decisions of this court. Anderson v. Fuller, 51 Fla. 380, 41 So. 684, 6 L.R.A. (N.S.) 1026, 120 Am.St. Rep. 170.
"And it has even been held that, where illegal or void contracts have already been executed, and payments of money made by the public officers under them, a suit in equity lies at the instance of a citizen and taxpayer to obtain an accounting and recover the payments back for the benefit of the public treasury, when no other remedy is available. See Russell v. Tate, 52 Ark. 541, 13 S.W. 130, 7 L.R.A. 180, *239 20 Am.St.Rep. 193; Osburn v. Stone, 170 Cal. 480, 150 P. 367; Mahoney v. City and County of San Francisco, 201 Cal. 248, 257 P. 49; Mines v. Del Valle, 201 Cal. 273, 257 P. 530; Cathers v. Moores, 78 Neb. 13, 110 N.W. 689, 14 L.R.A. (N.S.) 298; Neacy v. Drew, 176 Wis. 348, 187 N.W. 218."
See also Finley Method Co. v. Standard Asphalt Co. of Florida, 104 Fla. 126, 139 So. 795.
We are of the opinion that the lower court's decision in this case should be affirmed.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.