S. P. ROBINEAU, *Appellant*, v. PAUL A. DELONG AND ROB-
ERT L. DOWLING AS RECEIVERS OF THE FLORIDA FARMS
AND INDUSTRIES COMPANY, AND J. C. PENNY, *Appellees*.

En Banc.

Opinion Filed July 28, 1926.

1.  Where a court of chancery has appointed receivers to take
    charge of an estate and make sale of property under direc-
    tions, is the solemn duty of the court, in the administration
    of the estate to exercise watchful care in the consideration
    of the terms of any sale proposed in order to insure the most
    advantageous returns for the estate. And where it is brought
    to the attention of the court by the report of the receivers,
    or otherwise, that the proposed bid is for less than the prop-
    erty should reasonably be expected to sell, the judge of the
    court should refuse to confirm such proposed sale.

2.  Where receivers appointed by the court to make sale of cer-
    tain properties for liquidation, or benefit of creditors of such
    estate. report to the judge of the court that a certain party
    had made an offer for the property which they had accepted,
    subject to the court's approval, and that subsequently thereto
    such accepted bid or offer had been assigned by the bidder to
    another party, and such other party had been substituted in
    all respects as and for the original bidder, and that such fact
    had been so reported to the receivers by the parties. and that
    the substituted purchaser had made a deposit with the re-
    ceivers as an initial payment on the purchase price of the
    property. and that the initial payment of the original bidder
    previously made had been returned to him, and further that
    after the conference in which the substitution of parties had
    been reported and made known to the receivers, the substi-
    tuted purchaser had advised the receivers that he would not
    consummate the purchase on the terms of the original bid,
    and the substituted purchaser thereupon requested a return
    to him of the deposit made, and the receivers making such
    report therein petitioned and requested the court for instruc-

tions as to the disposition of the said deposit, upon the facts so stated in the receiver's report it was proper for the court to order a return of such deposit to the substituted purchaser.

3. Where a party becomes the successful bidder at a receiver's sale and before the confirmation of the sale by the court sells and assigns his rights and interest in such bid to a third party, and reports to the receivers that his assignee is to be regarded and taken as substituted for him as the bidder for or purchaser of the property and such substituted purchaser then and there makes an initial payment on the purchase price to the receivers, and the deposit before made by the original bidder is then and there returned to and accepted by him, and subsequently thereto the substituted purchaser informs the receivers that he declines to proceed further towards the consummation of the sale upon the terms of the original bid, and both the original bidder and the substituted purchaser make claim to the receivers for the initial payment last made, and the receivers submit the matter to the judge of the court for instructions, the court in determining to which of the parties the money should be returned. will not be governed by any alleged breach of the contract or agreement of assignment of interest made between such parties, but should order the return to the substituted purchaser. The alleged breach of contract should be left for determination by an action at law.

4. A contract made between a successful bidder at a receiver's sale and another party by which such bidder transfers and assigns his rights and claims under such bid before the sale has been confirmed by the court and by the terms of the contract of assignment the original bidder is to receive a profit or advance on his bid of more than one hundred per cent, will not be sanctioned, and no alleged repudiation or violation of such contract by the assignee will be considered by the court on a hearing to determine to which of said parties, original bidder or assignee, a refund of deposit should be paid.

An Appeal from the Circuit Court for Clay County; DeWitt T. Gray, Judge.

Decree affirmed.

*Stockton & Ulmer, Robert H. Anderson* and *Loftin, Stokes & Calkins,* for Appellant.

*Kay, Adams, Ragland & Kurz,* for Appellees.

KOONCE, Circuit Judge.—In chancery proceeding of the Circuit Court of Clay County, ancillary to a chancery proceeding in the Court of Common Pleas in Franklin County, State of Ohio, wherein Mary Miller *et al.,* were complainants and the R. L. Dolling Company, a corporation, The Florida Farms and Industries Company, a corporation, et al., were defendants, the Judge of the Circuit Court of Clay County appointed Paul A. DeLong and Robert L. Dowling as Receivers of certain properties in the State of Florida. The receivers by order of the court were directed to sell such properties, under conditions named in the order.

Acting by the authority given them in the order, the receivers, after some preliminary negotiations with one Penman, which were without definite results, accepted an offer from S. P. Robineau (appellant) as attorney and in behalf of J. H. Estes, Florida Enterprises, Inc., J. O. Harley and others, for such property, the acceptance being subject to the approval of the Judge. By the terms of this offer or "bid" a portion of the property in the hands of the receivers was to be sold to Robineau and associates for the sum of Two Hundred and eighty-five thousand dollars. Other portions of the property had been otherwise disposed of. Robineau deposited with the receivers the check of Estes for Ten Thousand dollars, as earnest money.

Inasmuch as the report of the Receivers must be con-

sidered and discussed in arriving at a conclusion in this cause, the subsequent transactions may be best stated by reciting the report, beginning at this point in the transaction.

, Commencing at page 75 of the transcript, and copying from the receiver's report:

"That on November 21, 1924, the said S. P. Robineau, with J. P. Harley and others and one J. C. Penny with his attorney, appeared before your Honor in Chambers at Jacksonville, Florida, and there it was *made known to the court that the said J. C. Penny* was to become the *Purchaser* of the said properties under the offer of the said S. P. Robineau, and the court then and there declined to enter any formal order touching proposed sale but gave to said party his oral instructions in reference thereto." (Italics ours).

"That thereupon there was delivered to O. O. McCollum by S. P. Robineau in the presence of the court, draft of said J. C. Penny in the sum of Fifty Thousand Dollars ($50,-000.00) on Mercantile Trust Company of St. Louis, Missouri, payable to said S. P. Robineau and endorsed by said S. P. Robineau to O. O. McCollum as attorney for your Receivers as the deposit at that time required to be made under the said offer of said S. P. Robineau, and the said check of J. H. Estes in the sum of Ten Thousand Dollars ($10,-000.00) was thereupon surrendered and delivered to the said S. P. Robineau."

"That on December 10, 1924, the said J. C. Penny verbally advised your Receivers through their attorney, O. O. McCollum, that he would not proceed to the purchase of said properties under the offer of said S. P. Robineau and on the same date wrote and delivered to your Receivers, and to McCollum & Howell their Attorneys, a letter requesting return to said J. C. Penny of the said Fifty

Thousand Dollars ($50,000.00) so paid as hereinbefore set forth, the original of which letter is hereto appended as a part of this report.''

''That thereupon on December 13, 1924, said S. P. Robineau requested definite instruction from the court as to whether or not this court would proceed to the consummation of the sale under the said written offer of the said S. P. Robineau, and your Receivers were there instructed to write said S. P. Robineau, that the court would not proceed to said or confirm a sale under the terms of the written offer of S. P. Robineau of November 11, 1924, and in conformity with these instructions your receivers did write the said S. P. Robineau, copy of which letter is hereto appended as a part of this report.''

''In the circumstances and under the conditions as herein set forth, under and upon which the said sum of Fifty Thousand Dollars was paid to and is now being held by your Receivers, your Receivers are not advised what disposition should be made of said sum of Fifty Thousand Dollars ($50,000.00).

''Wherefore your Receivers pray instruction of the court as whether the said moneys shall be returned and to whom the same shall be returned.

''And your Receivers will ever pray.

> Paul A. DeLong and
> Robert L. Dowling, Receivers
> By (Signed) Robert L. Dowling.

(Signed) McCollum & Howell, Attorneys for Receivers.''

(It is not necessary to copy letters appended.)

Upon said report of the Receivers a hearing was had before the court on January 9th, 1925. At such hearing were present in person S. P. Robineau, and also being represented by his attorneys, and the Receivers, and their at-

torney, and the attorneys for J. C. Penny. At that time Robineau filed an ''Answer to the report of petition of the Receivers, and by such answer claimed the right to have paid to him by the receivers the Fifty Thousand Dollars deposit. After hearing much testimony the court on February 17th, 1925, made an order directing the Receivers to pay the Fifty Thousand Dollar deposit to J. C. Penny. On the same date the court refused to allow Robineau to supersede the order directing such payment.

It is from these last two orders of the court, made February 17th, 1925, this case is now before this court.

There are two assignments of error:

1. That the court erred in making its order of February 17, 1925, instructing the Receivers of the Florida Farms and Industries Company to refund $50,000.00 to J. C. Penny.

2. That the court erred in denying the motion of S. P. Robineau for supersedeas, by its order of February 17, 1925.

In the brief of appellant's counsel, it is admitted that Penny is solvent and amply able to respond in damages or to comply with an order of restitution should the court find that the money was wrongfully returned to him, and should instead have been returned to Robineau. Therefore the second assignment may be considered as abandoned.

Neither is it necessary in view of the conclusions reached in this opinion, to consider the motion of appelles to dismiss the appeal.

It seems unnecessary to determine this cause from but one angle. But several questions have been raised and are so closely connected with the main issue as to merit consideration by the court.

If the Circuit Judge had been confined in his ruling

upon the report or petition for instruction (from the Receivers) which has been referred to hereinbefore, to the facts stated or contained in said report, it is obvious that his order to pay Fifty Thousand Dollars to Penny was proper. For by that report it is made clearly to appear by the words indicated by italics above, that Penny had in all respects been substituted as the bidder or purchaser. The report plainly says that Penny was to become the purchaser, that the sum of Fifty Thousand Dollars was paid to the Receivers by the check of Penny, payable to Robineau, and by Robineau endorsed to the attorney for the Receivers, and that thereupon the original deposit of Robineau, of the Estes check for Ten Thousand Dollars, was surrendered and returned to Robineau.

The Receivers at that time did not appear to be advised as to the terms of the deal or trade between Robineau and Penny, by which Penny was to be substituted as bidder or purchaser. All that the Receivers and the court appear to have been advised upon, at the conference of November 21, 1924, was that Penny was to be substituted as the bidder or purchaser and that Fifty Thousand Dollars was to be paid at that time, and Robineau's Estes check for Ten Thousand dollars returned to him. It was therefore immaterial to the Receivers whether this initial payment of Fifty Thousand Dollars was paid in money, or by check of Penny (admitted to be the equivalent of cash), payable directly to the Receivers or to Robineau and by him endorsed to them. At that time the Receivers were not concerned with the terms of the Robineau-Penny contract, or trade.

When Penny reported to the Receivers on December 10th, 1924, that he would not proceed to consummate the Robineau bid, and asked for a return of his deposit, the Receivers made the report above mentioned. It was entirely

proper for the judge upon such report if not otherwise advised, to order a refund of the money to Penny, for according to the report Penny was then the purchaser and by every reasonable construction of the report he it was who had made the deposit.

The situaiton is not analogous to one in which the original bidder borrowed the money to make his payment and presented his lender's check endorsed by himself as such payment, still retaining his position as bidder or purchaser. In such case the Receivers would not be concerned as to the terms upon which he secured the loan, nor take any steps to protect the lender. The difference is in the substitution by the contracting parties of the man giving the check as the purchaser in lieu of the original bidder.

But the court was further advised of the true situation. Robineau also requested the return to himself of the Fifty Thousand Dollars, and asked to be heard by the court in that behalf. He filed an answer setting forth in detail all the circumstances leading up to his connection with the Penman bid, and related in detail the transaction between himself and Penny. He appended to his "Answer" a copy of the contract or agreement with Penny so that such contract was before the court for consideration. Robineau complained in his answer, and insisted before the court at the hearing, that Penny had violated his contract in failing to notify him ten days in advance of his intention to refuse to consummate the purchase, and that therefore the money should be returned to him.

Suppose Penny did violate his contract. That would in no way change the situation so far as the court and the receivers were concerned. Penny would still be the substituted purchaser, and still be the man who paid the money to the receivers. For the court to order the deposit returned to Penny would in no sense be an endorsement by the court of any act of Penny's in violation of his contract. At the

very most it would merely be the equivalent of a declaration by the court that the quarrel between them was not properly before the court for determination. Neither would it amount to denial to the appellant of the constitutional right to have his cause determined by a jury (by forcing Penny to sue for recovery of the money). The order to return the money to Penny in no manner denied or restricted Robineau from maintaining an action at law for whatever damages he might be entitled by reason of the alleged breach of contract by Penny.

However, it might be well in this connection to further consider the contentions of appellant to the extent of an examination of the contract or agreement between him and Penny. The alleged violation or breach brings squarely before the court Section 7 of the contract which reads as follows:

"It is also understood that the purchaser (meaning Penny) shall in all respects be substituted for the vendor (meaning Robineau) as the accepted bidder for the said properties and in the event that said sale is not consummated as provided and that there is to be a refund of the said Fifty Thousand Dollars ($50,000.00) that the said refund shall be made directly to purchaser, provided, however, that the purchaser shall at least ten days in advance, notify the vendor in writing of his decision to abandon the consummation of the receiver's sale, and at the same time shall re-assign to the vendor all rights, title and interest herein acquired and obtained in said property owned by said receivers."

It is contended by appellant that Penny breached the contract in failing to notify Robineau ten days in advance of his decision to abandon the purchase. It is admitted that Penny re-assigned the contract.

The appellant having thus brought to the attention of the court the contract which is made the basis of his com-

plaint, there is no escape from the express terms of Section seven wherein it is stated that Penny was substituted for Robineau as purchaser, and that if there was to be any return of the deposit it should be made to Penny. Section 3 of the contract expressly provides that the Fifty Thousand Dollars was to be paid by the purchaser (meaning Penny), and that such amount was to be no part of the consideration moving to Robineau, but was to be applied towards the purchase price to the receivers. By Section 4 Penny assumed all liability on the bid to the receivers and there is the further provision that the sum paid to the receivers by Penny should not be deductible from any part of the amount to be paid to Robineau by Penny, but that Penny was to pay Robineau Two Hundred and Ninety-five Thousand Dollars over and above all amounts paid the receivers.

True there is the proviso in section 7 that Penny should give ten days advance notice of intention to abandon purchase. But this, as before stated, could only form the basis of an action at law if anything.

While it does not seem necessary, in view of what is stated above, to pursue this discussion further, there is still another interesting question presented, which is of sufficient importance to warrant consideration. In these days of "high finance" it well behooves a court to enquire with meticulous care into the administration of any estate submitted to its protection. The very purpose of appointing receivers in a case like this, is to preserve the estate as far as possible and make it realize the greatest benefit to the creditors. Therefore, when it became known to the court that this property was about to be resold by the bidder, even before confirmation of the receiver's sale, at a profit of Two Hundred and Ninety-five Thousand dollars, it was not only the right, but the solemn duty of the court to

refuse to confirm the receivers' sale, and require the property to bring something approaching its real value. The judge's action in the instant case was to be commended and not criticised. It is perfectly natural that one skilled in the art of speculation would seize upon opportunities to purchase at a low figure and sell at as great advance as possible. In this respect the appellant evidenced wonderful ability, and he claimed before the court that he had the right to capitalize his ingenuity. He therefore proposed to speculate upon the property in the hands of the court's receivers and take unto himself a profit of nearly Three Hundred Thousand Dollars without investment of any amount.

It may be true, no doubt is, that Penny needs no guardian, no protection from the court; that in the financial arena he and Robineau should be allowed to match their skill without interference and this might be so allowed if it did not injuriously affect the rights of others. The contract between Robineau and Penny was illegal because it deprived ,the estate being administered of practically half its value, and sought to take from the estate that large amount which should be applied to the payment of obligations and put it in the pocket of speculators.

The case of Camp. v. Bruce, 96 Va. 521, 31 S. E. Rep. 901, is a case very much in point. In that case the purchaser from a commissioner in a Partition suit, after sale had been reported, but before confirmation by the court, sold and assigned his interest to another at an advance of Five Hundred Dollars, (The original purchase price from the Commissioner being $2,000.00) agreeing to request the court to make deed to the assignee. The court held such a contract or assignment to be illegal and said:

Head-note 2. 'The contract is illegal where before confirmation of a judicial sale, one, instead of putting in an

upset bid purchases of the bidder his rights, giving him an advance on the bid.''

The court further said in the text of this decision : ''The law refuses to enforce illegal contracts, as a rule, not out of regard for the party objecting, nor from any wish to protect his interest, but from reasons of public policy. Whenever, therefore, the illegality of the contract appears, whether alleged in the pleadings or made known for the first time in the evidence, it is fatal to the case. That defect can not be gotten rid of either by failure to plead it or by agreeing to waive it in the most solemn manner. The law will not enforce contracts founded in its violation. Fry. Spec. Per. Sec. 309; 1 Story Eq. Jr. Sec. 261; Pom. Cont. (2nd ed.) 286; Coppel v. Hall, 7 Wall, 542.''

Continuing the Court said: ''Under the principles of the common law, any contract that is made for the purpose of or whose necessary effect or tendency is to lessen competition and restrain bidding at judicial sales is held to be illegal, because opposed to public policy. The object in all such cases is to get the best price that can be fairly had for the property. The policy of the law, therefore, is to secure such sale from every kind of improper influence. To allow one bidder to buy off another, which is but a species of bribery, and thus prevent the property from bringing the best price, is condemned in the law, and the courts will not enforce contracts founded in such practices. Underwood v. McVeigh, 23 Gratt. 409, 428, 429; Cocks v. Izard, 7 Wall. 559, 562; Fry Spec. Perf. Sec. 308; Pom. Cont Sec. 283; Greenh. Pub. Pol. pp. 183-189.''

''A court will never, where the facts are known to it, confirm a sale where the bidder has sold his bid at an advance, unless the advance paid or to be paid insures to the benefit of the parties to the suit. It does not allow bidders to trade behind its back, and speculate in that way on

property which it is selling. 2 Daniell, Ch. Prac. (5th Ed.) 1286; Holder v. Ruffin, 1 Tam. 341.''

Summing up the whole case, it may be said:

(1) Where a court of chancery has appointed Receivers to take charge of an estate and make sale of property, under directions, it is the solemn duty of the court, in the administration of the estate to exercise watchful care in consideration of the terms of any sale proposed in order to insure the most advantageous returns for the estate. And where it is brought to the attention of the court by the report of the receivers, or otherwise, that the proposed bid is for less than the property should reasonably be expected to sell, the Judge of the court should refuse to confirm such proposed sale.

(2) Where receivers appointed by the court to make sale of certain properties for liquidation, or benefit of the creditors of such estate, report to the Judge of the court that a certain party had made an offer for the property which they had accepted, subject to the court's approval, and that subsequently thereto such accepted bid or offer had been assigned by the bidder to another party, and such other party had been substituted in all respects as and for the original bidder and that such fact had been so reported to the receivers by the parties and that the substituted purchaser had made a deposit with the receivers as an initial payment on the purchase price of the property, and that the initial payment of the original bidder previously made had been returned to him, and further that after the conference in which the substitution of parties had been reported and made known to the receivers, the substituted purchaser had advised the receivers that he would not consummate the purchase on the terms of the original bid, and the substituted purchaser thereupon requested a return to him of the deposit made and the receivers making

such report therein petitioned and requested the court for instruction as to the disposition of the said deposit, upon the facts so stated in the receivers' report it was proper for the court to order a return of such deposit to the substituted purchaser.

(3)  Where a party becomes the successful bidder at a receivers' sale and before the confirmation of the sale by the court sells and asigns his rights and interest in such bid to a third party, and reports to the receivers that his assignee is to be regarded and taken as substituted for him as the bidder for or purchaser of the property and such substituted purchaser then and there makes an initial payment on the purchase price to the receivers and the deposit before made by the original bidder is then and there returned to and accepted by him and subsequent thereto. the substituted purchaser informs the receivers that he declines to proceed further towards the consummation of the sale upon the terms of the original bid. and both the original bidder and the substituted purchaser make claim to the receivers for the return of the last initial payment and the receivers submit the matter to the judge of the court for instruction, the court in determination to which of the parties the money should be returned will not be governed by any alleged breach of the contract or agreement of assignment of interest made between such parties, but should order the return to the substituted purchaser. The alleged breach of contract should be left for determination by an action of law.

(4)  A contract made between the successful bidder at a receivers' sale and another party by which such bidder transfers and assigns his rights and claims under such bid before the sale has been confirmed by the court where, by the contract of assignment, the original bidder is to receive a profit or advance on his bid of more than one hundred per

cent will not be sanctioned. and no alleged repudiation or violation of such contract by the assignee will be considered by the court on a hearing to determine to which of the parties, original bidder or assignee, a refund of deposit should be paid.

The judgment of the Circuit Court is affirmed.

WHITFIELD, ELLIS, TERRELL AND BUFORD, J. J., concur.

BROWN, C. J., AND STRUM, J., disqualified.