FINLEY METHOD COMPANY, a Corporation, *Plaintiff in Error*, vs. STANDARD ASPHALT COMPANY OF FLORIDA, INC., a Corporation, *Defendant in Error*.

139 So. 795.

Division B.

Opinion filed January 28, 1932.

Petition for rehearing denied February 23, 1932.

*McCollum & Howell,* of Jacksonville, for Plaintiff in Error;

*H. L. Anderson,* of Jacksonville, for Defendant in Error.

PER CURIAM.—In a suit on the common counts for money due for work done and materials furnished, and on account stated, brought against Finley Method Company by the Standard Asphalt Company of Florida, Inc., the Circuit Judge directed a verdict in favor of the plaintiff for $15,039.79 and judgment was entered for that amount.

This judgment has been brought here for review on writ of error.

The record shows that there was included in the recovery the sum of $1,207.00 for what is referred to as "balance on yardage account." The defendant moved at the close of plaintiff's testimony to eliminate this item from the bill of particulars by withdrawing it from the jury. The basis of the motion to this effect was that the so-called "yardage" account was nothing more than a "rake off" or "gravy" as one Morris is alleged to have referred to it, when he exacted an agreement from an officer of defendant Finley Method Co., that said company would pay Standard Asphalt Corporation of Florida, Inc., 4½¢ per square yard upon all surfacing laid or constructed by Finley Method Company under contracts which it had procured for surfacing roads for Orange County, with which Morris threatened to interfere by injunction unless he should be able to exact a promise from Finley Method Company that he should have some of the "gravy" for Standard Asphalt Company which Finley Method Company had been getting from Orange County by reason of its contracts. Under the arrangement shown, Standard Asphalt Company did none of the surfacing itself, but derived its claim against Finley Method Company solely by virtue of the so-called "gravy train" agreement hereinbefore mentioned. About $17,586.60 became included in this yardage account between December 16, 1927 to July 31, 1928. Of this amount $16,369.60 appears to have been paid prior to the bringing of the suit, leaving a claim in favor of Standard Asphalt Company for a balance of $1,207.00 which was included in the recovery allowed.

The evidence is clear,—in fact it appears beyond a reasonable doubt to the effect—that the "yardage" agreement in question was not the result of a natural business agreement between the two contracting parties, but was suggested by one of them, and accepted by the other, as

the result of the beneficiary's real or supposed ability to interfere by injunction, or otherwise, with the business which Finley Method Company had been getting from Orange County in the way of road contracts for surfacing paved highways according to its special methods.

No consideration moved to Finley Method Company to pay this "yardage" other than the agreement of one Carl Morris, president of Standard Asphalt Company, that as a tax payer of Orange County he would not interfere with Finley Method Company's getting county work at a price which would give it a profit, and thereby, as Morris is said to have expressed it, continue Finley Method Company in "sitting on a gravy train." Under this agreement also, Morris was not to bid on another contract which was coming up and was to do everything he could to keep things running smoothly for Finley Method Company. The unpaid claim of $1,207.00 for "yardage" which was sued for, undoubtedly accrued, if at all, under such agreement, since no other consideration for it is suggested or proved.

Laws requiring contracts to be let by public authorities to the lowest responsible bidders serve the object of protecting the public against collusive contracts and prevent favoritism toward contractors by public officials; because they tend to remove temptation on the part of public officers to seek private gain at the tax payers' expense and because they are also to secure fair competition upon equal terms to all bidders, and to close all avenues to favoritism and fraud in its various forms, as well as opportunities and temptations to commit fraud, they are of highly remedial character, they should receive in every case a construction which will effectuate their true purpose and avoid the likelihood of their intent being circumvented, evaded or defeated. Wester v. Duval County Commissioners, decided at the present term.

The principal contracts involved in this case were subject to the competitive bidding statutes. The rule is well

settled in the United States that all agreements, whether principal or subsidiary in character, which in their necessary operation upon the action of contractors engaged in bidding for public work, tend to restrain the natural rivalry and competition of the parties, and thus produce a result disadvantageous to the public, are against public policy and void. What the public has to be on guard against in the violation of such salutary statutes as these, is not the violation direct, but the violation oblique; not the frank disregard of what the statutes in terms require, but the suave and insidiously evasive arrangements which operating in secret understandings between contractors and their privies, tend to produce an effect as harmful in result as the most direct misconduct or malfeasance.

Therefore, without regard to its form, any agreement which is made between contractors and sub-contractors, or others, for the purpose of preventing free and fair competition at public lettings of contracts, or for the purpose of giving undue advantage to either of the parties, or their privies, while engaged in the performance of public contracts, is prohibited by public policy and is void, though no actual injury may have resulted, the test of legality being the evil tendency of the agreement, and not its actual result in the particular instance. Kuhn v. Buhl, 251, Pa. St. 348, 96 Atl. 977, Ann. Cas. 1917-D 415; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. Rep. 839, 43 L. Ed. 1117; Hardison vs. Reel, 154 N. C. 273, 73 S. E. 463, 34 L. R. A. (NS) 1098; King vs. Winants, 71 N. C. 469, 17 Am. Rep. 11; Camp vs. Bruce, 96 Va. 521, 31 S. E. Rep. 901, 70 Am. St. Rep. 873; Dudley vs. Odom, 5 S. C. 131, 22 Am. Rep. 6; Jones vs. Caswell, 3 Johns. Cas. (N. Y.) 29, 2 Am. Dec. 134; Atcheson vs. Mallon, 43 N. Y. 147, 3 Am. Rep. 678; Western Indemnity Co. vs. Crafts, 240 Fed. 1; McMullen vs. Hoffman, 84 Fed. 372, 45 L. R. A. 410, affirmed in 174 U. S. 639, 19 Sup. Ct. Rep. 839, 43 L. Ed. 1117; Walsh vs. Hibberd, 122 Md. 168, 89 Atl. 395, 50

L. R. A. (N. S.) 396; 6 R. C. L. 809-814. See also Robineau vs. DeLong, 92 Fla. 418, 109 Sou. Rep. 636.

In this case the suit was brought on the common counts, but it was permissible to prove the special contract to show the measure of recovery, in support of the common counts after the contract had been completely performed. Haxen vs. Cobb, 96 Fla. 151, 117 Sou. Rep. 853.

And in any action brought in which it is necessary, or attempted, to prove an illegal contract in order to maintain the action, or sustain the particular recovery sought, the courts will not enforce it, nor will they enforce alleged rights directly springing from such contract, even after it has been performed. McMullen vs. Hoffman 69 Fed. 509, 75 Fed. 547, 48 U. S. App. 596; 83 Fed. 372, 28 C. C. A. 178, 174 U. S. 639, 19 Sup. Ct. Rep. 839, 43 L. Ed. (US) 1117.

The plaintiff here could not have made out his case for recovery for any of the "yardage" claimed, without referring to its illegal agreement by which it was to get certain amounts of money, not for any real service performed by it in the ordinary course of business, but as a consideration for allowing the opposite party to continue to do what an officer of plaintiff referred to as "riding a gravy train" with reference to the paving contracts sought and procured by defendant in Orange County.

In such a situation as this, the law which prohibits the end, will not lend its aid in promoting any means designed to carry it into effect. Even in suits on an account stated, the rule is that an illegal item in such an account stated cannot be recovered where it clearly appears in the course of proving such account stated at the trial. Wethers vs. Sandlin, 44 Fla. 253, 32 Sou. Rep. 829. The courts will not give judgment in one form of action for what it declares wrong in another. The whole doctrine of illegal concontracts, and a denial of recovery based thereon, is founded on a regard for the public welfare, and it has been con-

fidently asserted that the maintenance of this doctrine is essential to the preservation of the state. 6 R. C. L. 692. This would seem especially to be so in modern times when there are so many "gravy trains" capable of being "ridden" to the detriment of the public treasury, if contracts having that object in view could be sustained when arrived at by indirect and circuitous methods designed to avoid the effect of a direct agreement expressed in so many words.

We are therefore of the opinion that in cases of attempted recovery under the common counts for money alleged to be due as the result of entering into an illegal contract, the maxim to be applied is *"Potior est conditio defendentis,"* and that no recovery should be allowed. There are exceptions to the rule, of course, but these are unimportant to state in connection with the present controversy.

The evidence warranted the court in directing a verdict for plaintiff for the balance shown to be due on the open account, which was established by the books of account as well as by proof of every one of the separate items. We do not deem it necessary to discuss in detail the assignments which relate to admission of testimony, denial of motions to strike proofs and items from the bill of particulars, denial of motion for directed verdict for defendant, and refusal to give charges. All of these assignments have been considered, and none of them have been found to be ground for reversal of the judgment which is fully supported by allegations and proof, except as to the illegal item of $1,207.00 for "yardage" heretofore referred to.

If, within thirty days after filing the mandate in the court below, the plaintiff shall pay all costs of this writ of error and file a remittitur for the item of $1,207.00 with any interest thereon which may have been included in the judgment, such judgment will stand affirmed for the remainder, otherwise it will be reversed and a new trial

awarded with directions to have such further proceedings as may accord with law and this opinion.

Judgment affirmed on condition of remittitur and payment of costs of writ of error.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.