PEARL SECKLIR, Plaintiff, *v.* JAMES C. PENNEY, Defendant.

Supreme Court, Westchester County, August 21, 1933.

*Joseph A. Shay* and *David Bernstein,* for the plaintiff.

*Clark & Davis* and *Ralph W. Gwinn,* for the defendant.

TAYLOR, GEORGE H., JR., J. The plaintiff, holder by mesne assignments of the claim of one S. P. Robineau, sues herein to recover $295,000, alleged damages for the defendant's claimed breach of a contract in writing (detailed *infra*), made in Florida, relating to real and personal property in that State and there to be performed, the parties to said contract being said S. P. Robineau (therein described as vendor) and the defendant (therein described as purchaser), the contract being dated November 20, 1924. Said contract recited in effect (a) that one A. G. Penman on September 30, 1924, made a bid for $305,000 to the receivers (appointed in a certain litigation — see *infra*) of the Florida Farms and Industries Company, for the purchase of certain property of that corporation, which bid was on that day duly accepted by said receivers; (b) that Penman had assigned said bid and his rights thereunder to Robineau; (c) that Robineau was willing to sell to the defendant, who was willing to purchase, " all the right, title and interest " of Robineau. The contract then recited a valuable consideration and provided in express terms as follows:

" 1. That the Vendor agrees to sell, transfer, set over and assign to the said Purchaser, and the said Purchaser agrees to purchase, receive and pay for all the rights, title and interest held and owned by said Vendor under and by virtue of that certain bid made by A. G. Penman on September 30, 1924, to the Receivers of the Florida Farms & Industries Company, which said Receivership is now existing and in operation in the cause of Mary Miller, et al, Complainant, versus The R. L. Dollings Company, a corporation, and Florida Farms & Industries Company, a corporation, et al, Defendants, in

the Circuit Court of the Fourth Judicial Circuit of Florida in and for Clay County, and in the office of the Clerk of the Court of Common Pleas, Franklin County, Ohio, which said bid was accepted by the Receivers on September 30th, 1924, and thereafter assigned by A. G. Penman to the herein Vendor, and by virtue of that certain offer of said Vendor dated November 11th, 1924, to said Receivers in said cause, which said offer was received by the said Receivers for submission to the Court and the sum of Ten Thousand ($10,000.00) Dollars paid by said Vendor to said Receivers in accordance with said offer, which said sum was duly accepted and used by said Receivers.

" 2. And that said Vendor agrees to sell all his right, title and interest in and to said bid, assignment and offer, and the said Purchaser agrees to buy the same and to pay the said Vendor therefor the sum of Two Hundred Ninety-five Thousand Dollars ($295,-000.00), and to pay and assume all of the payments theretofore assumed to be made and paid by the Vendor or his assignor on said bid to the said Receivers. Said Two Hundred Ninety-Five Thousand ($295,000.00) Dollars to be paid to the Vendor herein shall be payable by said Purchaser to said Vendor in cash at the time when the proceedings under which the Receivers are acting and the titles transferred by them shall have been examined and found satisfactory to the Purchaser and acceptance by him of said titles in accordance with said bid and said offer, and acceptance thereof.

" 3. The said Purchaser agrees to pay this day to the said Vendor the sum of Fifty Thousand ($50,000.00) Dollars, which sum shall be employed by the Vendor to re-imburse himself for the Ten Thousand ($10,000.00) Dollars heretofore paid by him to the Receivers as aforesaid, and to pay Forty Thousand ($40,000.00) Dollars to the Receivers necessary to be paid to them under said offer on November 22nd, 1924, which said Fifty Thousand ($50,000.00) Dollars so paid to and disbursed by said Vendor shall in nowise constitute a payment of any part of the said sum of Two Hundred Ninety-five Thousand ($295,000.00) Dollars to be paid to the Vendor by the Purchaser as the purchase price of his rights, titles and interest herein, but shall constitute a part of the payment of the purchase price to be paid by the successful bidder to the Receivers as provided in said bid and offer aforesaid.

" 4. The said Purchaser agrees to assume and pay any and all payments to be made to the Receivers for the property to be sold by them under the Receivers' Sales as inventoried and appraised in the above named cause when and as the same shall become due and payable by the bid, offer and order of court in connection therewith, and the sums paid by said Purchaser to said Receivers shall not be

deductible from any part of the purchase price to be paid to the Vendor herein; it being understood that said Two Hundred Ninety-five Thousand ($295,000.00) Dollars is to be paid by the Purchaser to the Vendor over and above the sums to be paid to the Receivers.

"5. It is expressly understood and agreed by and between the parties that in the event that the Receivers' Sale shall be completed and all moneys to the Receivers become due and payable under the terms of said bid and offer before the first day of January, 1925, that the Vendor shall accept the promissory notes of the Purchaser in the sum of Two Hundred Ninety-five Thousand ($295,000.00) Dollars, with interest thereon at six per cent (6%) per annum said note to be made due and payable on or before the 15th day of January A. D. 1925, and if, however, said Receivers' Sale shall be consummated after January 1st, 1925, then the full consideration to the Vendor shall be paid by the Purchaser in cash at the time of the completion of said sale.

"6. It is also understood and agreed that after the acceptance of the bid of said Penman by agreement between the parties, certain properties were sold for the sum of Twenty Thousand ($20,000.00) Dollars, and that the properties so sold are to be excluded from the property to be conveyed by the said Receivers and credit of said sum of Twenty Thousand ($20,000.00) Dollars is to be made upon the said bid leaving a total balance due to the Receivers then of Two Hundred Eighty-five Thousand ($285,000.00) Dollars.

"7. It is also understood that the Purchaser shall in all respects be substituted for the Vendor as the accepted bidder for said properties and in the event that said sale is not consummated as provided and that there is to be a refund of the said Fifty Thousand ($50,000) Dollars, that the said refund shall be made directly to purchaser, provided, however, that the Purchaser shall, at least ten (10) days in advance, notify the Vendor in writing of his decision to abandon the consummation of the Receivers' Sale, and at the same time shall re-assign to the Vendor all rights, title and interest herein acquired and obtained in said property owned by said Receivers.

"8. It is further understood and agreed that upon the consummation of the said Receivers' sale certain titles to the real estate to be acquired by and under said Receivers' sale will thereafter require clearance of clouds and quieting of title before full and satisfactory title can be acquired by the Purchaser to the real estate involved in said Receivers' sale, and the Vendor agrees to pay all costs of litigation, expenses and attorneys fees required for the institution and perfection of said suits to quiet title based upon defects and requirements which shall be indicated by attorneys for the Purchaser;

provided, however, that the obligation of the Vendor to pay for said suits as aforesaid shall be limited to the sum of Ten Thousand ($10,000.00) Dollars and no more, and that the purchaser will assume and pay all sums required for said suits to quiet title as aforesaid over and above the sum of Ten Thousand ($10,000.00) Dollars from the purchase price to be paid to the Vendor for the purpose of securing himself against the payment of the costs of litigation, expenses and attorneys fees in said suits; provided, however, the Vendor may at any time obtain payment and release of said Ten Thousand ($10,000.00) Dollars by furnishing a good and sufficient bond in the sum of Ten Thousand ($10,000.00) Dollars conditioned upon the fulfilment of the Vendor's obligation in this paragraph contained.

" In witness whereof, the said Vendor and the said Purchaser have hereunto set their hands and seals this the 20th day of November, A. D. 1924.

" Signed, sealed and delivered   " S. P. ROBINEAU, [SEAL]
    in the presence of us:         " Vendor.
" L. KURZ.                        " J. C. PENNEY, [SEAL]
" WM. T. STOCKTON."               " Purchaser.

The complaint alleges said contract and that by reason thereof the defendant became the owner of the said accepted bid (of Penman) and offer (of Robineau); that in February, 1925, after the $295,000 became due to Robineau, the defendant breached the agreement, refused to pay and without Robineau's knowledge or consent purchased and obtained the said properties direct from the sellers (meaning said receivers). Robineau's due performance of the terms and conditions of the agreement on his part to be performed is also alleged, and as well that he assigned his said claim to Arthur C. Penman, who prior to the commencement of this action assigned it to the plaintiff; and further that no part of said sum, alleged to be due, has been paid. Judgment is demanded for said amount and interest.

In his answer as amended the defendant admits the execution of said agreement; he denies other material allegations of the complaint, controverts the defendant's alleged liability and pleads a number of affirmative defenses in avoidance. The substance of the latter, as far as they remain in the case, is: (a) That Robineau in said agreement transferred to the defendant nothing of value; (b) that Robineau obtained no enforcible rights against the defendant by virtue of it; (c) that there was a total failure of consideration for the agreement; (d) that the same was against public policy and void; (e) that the agreement was terminated; (f) that its execution by the defendant was induced by fraud of Robineau; (g) that a certain

(Dade county) Florida judgment in an action there brought by the plaintiff against the defendant is *res adjudicata* herein; and (h) that the plaintiff, by reason of facts related to the same Florida litigation, is estopped (otherwise than because of the principle of *res adjudicata*) from prosecuting this one. This case presents echoes of considerable litigation in the courts of Florida (see *Robineau* v. *De Long*, 92 Fla. 418; 109 S. 636). In an interlocutory way certain features of the case related to an alleged defense of *res adjudicata*, since withdrawn and not the one above referred to, were before a distinguished colleague who disposed of the same adversely to the defendant (see opinion of BLEAKLEY, J., 138 Misc. 453).

I dispose of certain of the affirmative defenses remaining, *in limine* favorably to the plaintiff with brief comment: (1) There is no evidence whatever from which it can be inferred that the execution by the defendant of the relevant contract was induced by the fraud of Robineau; each party was represented by competent counsel at the time of the execution of the contract, and there was full disclosure by Robineau of the exact situation; the plaintiff's alleged cause of action is not vulnerable on the ground of fraud. (2) The remaining defense of *res adjudicata* was not established by the defendant; it related to the above-mentioned suit brought in Dade county, Fla., by the plaintiff's assignor, Robineau, against the defendant, which in effect included the cause of action herein; certain proceedings interlocutory in their nature were had therein, including the sustaining by the Florida court of a demurrer to the pleading of the plaintiff therein in the part thereof which alleged this contract, but there was no final determination of that litigation on the merits (*Baird* v. *Erie R. R. Co.*, 210 N. Y. 225; *Peterson* v. *Ocean Electric Ry. Co.*, 214 id. 43, 45; 54 C. J. 774, *infra*), and in fact no actual judgment therein; the plaintiff withdrew the case which, at his request, was dismissed by the court and terminated, but not in such a way legally as to conclude Robineau or the plaintiff, the assignee of his claim; the said termination is not *res adjudicata*. (See *Baird* v. *Erie R. R. Co.*, 210 N. Y. 225; 54 C. J. 774 [1193].) (3) The defendant's claim of estoppel otherwise is based apparently upon the claimed fact that defendant changed his position upon the strength of the aforesaid dismissal and paid his attorneys their fees in the litigation, and defendant asserts that, therefore, Robineau is estopped from the further assertion of this claim and that the plaintiff is likewise estopped from asserting it and from maintaining this action. The mere statement of the foregoing facts shows that there is no legal basis for the defendant's said claim of estoppel; Robineau made no representation, express or implied, to the defendant upon with-

drawing the Florida action, that the former would not assert the relevant claim again. Said defense of estoppel is absolutely without merit. (For principle see discussion in *Western N. Y. & Penn. Ry. Co.* v. *Rea*, 83 App. Div. 576.)

The remaining questions in the case merit more detailed discussion and comment, viz.: (a) Whether Robineau, under the facts, had anything to sell to the defendant for $295,000. or any other sum; (b) whether there was not a lack or a total failure of consideration for the defendant's promise to pay said sum of $295,000 which the defendant was to pay to Robineau, and (c) whether the contract in the light of circumstances related to the receivership, to the interest of creditors and stockholders, and to the large profit ($295,000) which was to accrue to Robineau, was not illegal and void as against the public policy of Florida.

The rights of the parties must be adjudged according to the law of the State (see *Bath Gas Light Co.* v. *Rowland*, 84 App. Div. 563; affd., 178 N. Y. 631), although the law of New York (*lex fori*) governs in " all matters pertaining to remedial as distinguished from substantive rights." (47 C. J. 17, § 14; *Miller* v. *Brenham*, 68 N. Y. 83, 87; *Stoneman* v. *Erie Ry. Co.*, 52 id. 429; *Merchants' Loan & Trust Co.* v. *Clair*, 36 Hun, 362; affd., 107 N. Y. 663; *Waters* v. *Spencer*, 44 Misc. 15.)

In the absence of proof of the Florida law, the presumption is that the common law of New York is in force there. (*International Text Book Co.* v. *Connelly*, 206 N. Y. 188, 200, 201.)

The facts for the most part undisputed are:

In 1923 The Florida Farms and Industries Company, an Ohio corporation, owned, subject to some defects in certain titles, 120,000 acres of land at Green Cove Springs, Clay county, Fla., near Jacksonville, and as well personal property there located. Said property is referred to in the contract here involved (*supra*).

The corporation was in difficulties. Two (domiciliary) receivers thereof, Robert L. Dowling and Paul A. De Long, in an action brought by Mary Miller and others against the R. L. Dollings Company, a corporation, and Florida Farms and Industries Company, a corporation, were appointed by the Court of Common Pleas of Franklin county, Ohio, on July 27, 1923. By said order no power or direction to sell the corporate property was given. On July 30, 1923, the same two men were appointed (ancillary) receivers by the Circuit Court of Clay county, Fla., by its order, which likewise contained no authority or direction to sell. On August 22, 1924, however, an order of said Circuit Court (See Clark Receivers, § 321) was made. This in effect authorized and directed the sale of said (Florida) property of the corporation, upon written bids to

be submitted September 30, 1924. The order contained plenary directions in relation to the sale, and by its terms contemplated confirmation by the court before any sale thereunder should become effective. There was no authorization of the Ohio court for such sale, but the relative corporate assets were in the custody of the Florida court to be disposed of as equity and the orderly administration of justice might require (Id.), and its decree in that regard was conclusive. (Id.) There was due advertising of notice of the ordered sale. The sale was duly held. One A. G. Penman on September 30, 1924, submitted a written sealed bid for $305,000, payable in certain installments. It was *accepted by the receivers* October 1, 1924, in a writing in which they stated also that Penman's time to pay the " first installment "— this was $10,000 — was extended until October 15, 1924, with the court's approval. Penman never paid anything. His bid lapsed October 15, 1924. I have not overlooked plaintiff's claim that it was kept alive by oral arrangement with the receivers. I determine, however, that it lapsed, as stated. It was never approved or accepted by the court. No sale to Penman was confirmed. On November 11, 1924, Robineau without reference to the order of sale in writing offered " on behalf of J. H. Estes, Florida Enterprize, Inc. J. O. Harley and others " $285,000 for the same real and personal property (less property amounting to $20,000 sold by the receivers), on prescribed terms. He delivered Estes' check for $10,000 as a down payment. His offer contemplated payments of the balance ($275,000) in two installments ($40,000 and $235,000). The check so deposited figured the day before in another (attempted) Robineau transaction. On November 10, 1924, in writing he had offered the same Estes check as a down payment on *the Penman bid* to the receivers' counsel who did not accept it. The said check was never collected by the receivers. It was returned to Robineau on November 21, 1924. (See *infra*.) The Robineau " offer " ($285,000) was accepted with modifications *by the receivers* by telegram followed by letter, but never by the court. There had been no readvertising after the lapse of the Penman bid. The time for bids under the (ordered) sale had long since expired. As indicated, the court never confirmed the Penman bid or the Robineau " offer " and the Circuit Court (Judge GRAY) affirmatively refused to confirm the latter. The defendant, shortly before November 20, 1924, went to Florida from New York at the instance of Estes, who had interested defendant in the property, but did not disclose to the latter the situation as to Estes check of $10,000. Defendant made a casual inspection of the Florida property with Robineau and others. The contract detailed (*supra*)

was prepared hurriedly by the lawyers respectively of Robineau and the defendant and was signed November 20, 1924, in the late afternoon or evening. On November 21, 1924, it was disclosed to Judge GRAY that the defendant would be the purchaser; *but no one had disclosed to the court the fact of the prospective profit of $295,000 which would accrue to Robineau if the Penney deal was consummated.* In the presence of Judge GRAY the defendant paid to the receivers $50,000 in a check to Robineau's order, which check by the latter was indorsed and delivered to the receivers' attorney for them. The receivers held the proceeds of that check until ordered by the Circuit Court (Judge GRAY) on February 17, 1925, to return it to the defendant. (See *Robineau* v. *De Long, supra.*) A controversy later arose between the defendant and Robineau as to who was entitled to the return of the $50,000, and disclosure of the true situation and of the said enormous profit to Robineau was then first made to the court. Prior thereto efforts had been made on Robineau's behalf to obtain the court's confirmation of his " offer," but without success. After the execution of the contract (November 20, 1924) defendant, through counsel, investigated the receivership proceedings in Ohio and Florida, and also in some degree the titles to the Florida real estate, and found that a substantial portion of the latter rested on tax deeds and so-called " no basis " deeds — these had breaks in the chains of title. Defendant was advised that the evidence of adverse possession was insufficient to cure the defect, and also that the facts surrounding the Robineau " offer " including the prospective profit of $295,000 created a situation contravening the public policy of Florida, because Robineau's offer, if confirmed, would result in the receipt by the receivership estate of an impressive amount ($295,000) less than defendant was paying to Robineau (namely, $600,000) and would result in Robineau's reaping a profit of $295,000 without his investing anything except his considerable ability to manoeuver all to the detriment of those interested in the corporation thus in receivership. On December 9, 1924, defendant, in writing, notified Robineau of the former's decision to abandon the consummation of " what is therein mentioned [meaning clause 7 of the contract] as the receivers' sale," offered a reassignment of rights and inclosed an executed reassignment. Thus in effect the defendant withdrew from the contract and repudiated it. I determine that it is immaterial whether or not he did this " ten days in advance " as prescribed in the contract. Robineau, in writing, declined to acquiesce, stating in effect that the notice was not timely. The defendant then wrote Robineau assigning nine separate reasons for defendant's withdrawal. Under

clause 2 of the contract it is to be noted that no payment became due from defendant until " the proceedings under which the receivers are acting and the titles transferred by them shall have been examined and found satisfactory to the purchaser " (defendant). Under familiar principles defendant could not be arbitrary in these respects — " satisfactory " contemplated the satisfaction of a reasonable person acting in good faith. (See *Moot* v. *Business Men's Investment Assn.*, 157 N. Y. 201, 204.) Clause 4 in effect provided that certain payments (exclusive of the $295,000) which the defendant agreed to assume and pay to the receivers were only to be made " when and as the same shall become due and payable by the bid, offer and *order of the Court* [italics mine] in connection therewith." Subsequent to defendant's said repudiation and upon an application to the court by the receivers for instructions, Robineau sought to obtain the return to himself of the $50,000 paid by the defendant really through Robineau as a conduit. Judge GRAY on February 17, 1925, decided that the defendant was entitled to the money, and ordered it paid to him. The Supreme Court of Florida in July, 1926, affirmed said order in an opinion (109 S. 636) giving detailed reasons for the affirmance. Before that determination was rendered, Robineau (December 30, 1924) commenced an action for damages for breach of contract in the Circuit Court of Dade county, Fla. That action resulted in the inconclusive way above mentioned. After it was in effect discontinued and withdrawn by Robineau on October 13, 1926, this plaintiff as assignee (by mesne assignments) of Robineau's said claim, brought this action in the Supreme Court of New York, county of New York, and subsequently it was removed to Westchester county and tried before this court without a jury. The parties in effect stipulated that formal findings might be dispensed with and that the court might direct a verdict as required by the applicable law with the same effect as if a jury were present. It is to be noted in passing that the defendant on February 20, 1925, purchased the relevant properties at a public sale to the highest bidder for $400,000.

About December 24, 1924, defendant deposited $50,000 with the receivers on account of a bid of $400,000 which he agreed, and in effect guaranteed to make at that public auction sale, at which he started the bidding at that sum, and acquired the said properties. The defendant had reserved the right at said sale to make higher bids if there were other bidders. In view of the legal considerations discussed (*infra*) which lead to the conclusion no cause of action, the defendant's said deposit, bid and purchase, all the circumstances attendant upon the same are legally immaterial herein.

After careful consideration of the voluminous record and of the

excellent briefs, I am of the opinion and decide that the plaintiff has failed to establish facts sufficient to constitute a cause of action, and that the defendant must prevail upon the merits. For this determination I assign the following reasons:

(a) *Robineau neither on November 20, 1924, nor thereafter, had any rights whatever in the corporate property to sell to the defendant for $295,000, or any other sum, the consideration for the promise of the defendant to Robineau in the contract of that date, wholly failed,* making said contract unenforcible. The Penman bid, never accepted or confirmed, lapsed. It became a nullity October 15, 1924. Robineau, the claimed assignee of that bid, had in law, by reason thereof or otherwise, no right which he could convey to any one; his attempted transfer to Penney gave the defendant nothing. The " offer " by Robineau of November 11, 1924, *accepted* by the receivers, *but never accepted by the court,* even in connection with such (receivers') " acceptance," gave Robineau no enforcible rights against the property of the corporation which he could transfer to the defendant; therefore, upon plain principles there was total failure of consideration for the defendant's promise which was and is wholly unenforcible. (See Williston Cont. § 137; Elliott Cont. § 254, and relevant cases cited, *infra.*) The mere size of the promised payment ($295,000) and the provisions of the contract otherwise make it quite clear that the parties contemplated that the defendant was to receive an *actual* as distinguished from a *possible* right in the corporation's property in receivership. In such a case this is the law: " If an assignment of a supposed right is made on the justifiable assumption by the assignee that he is to receive not merely such possible right as the assignor may have, but an actual right, the assignee's defense to any promise made by him in consideration of the assignment, if it turns out that no right was conveyed thereby, seems to be mistake or failure of consideration rather than lack of consideration." (Williston, *supra.*)

Said writer further says that questions of this character have arisen in cases involving patents where patentees had sold them, or licensed their use in return for a promise of payment (Id.), and that in some cases it has been laid down broadly that there is no consideration for a promise to pay money in return of a patent which is for any reason void. (Id. and cases cited.) The author continues (Id.): " In the United States, it seems clear that presumptively the bargain though technically for a specific patent must be understood to contemplate that the assigned patent *will* confer a valid right upon the assignee. [Italics mine.] Therefore though an assignment of a patent be strictly what was requested, yet if it does not give the assignee the exclusive privilege con-

templated, there is a failure of consideration which will be a defence to an action for the promised price even though the promise, being under seal, needed no consideration."

The principle also applies where a guardian without judicial or legal authority agrees to sell real estate of his ward, an action is brought upon a promissory note given for a portion of the purchase price; the consideration fails. (*Sorrells* v. *McHenry*, 38 Ark. 127, 135.) It also applies where one of two executors agrees to sell land of a decedent under whose will the executors are required to act jointly; the court in an action by the purchaser to recover back money paid on the deal has held in effect that the consideration wholly failed, as *one* executor had no power to sell. (*House* v. *Kendall*, 55 Tex. 40, 44.) In Elliott on Contracts, section 254, we find the author's exposition of this same principle: " Where the thing contracted for is a nullity it is ineffectual as a consideration and will not support a promise based thereon. Thus a failure of consideration results on the assignment of a patent which the parties deem valid, but which subsequently is proven void, and a contract based thereon cannot be enforced. And in the transfer of personal property generally, if the seller did not have title * * * there is no consideration for the contract based on the transfer."

This principle also finds expression in a New York case relating to an invalid patent (*Marston* v. *Swett*, 66 N. Y. 206, at p. 212). I agree with defendant's counsel that at all relevant times Robineau was merely a *negotiator* with the receivers for the property, and that neither they nor the court were ever under any obligation to give him title pursuant to the terms of his " offer." These views lead to the conclusion also that there was no breach of contract by the defendant as alleged.

(b) *The entire transaction, which contemplated that the receivers should deliver title to property held by them to Robineau for $305,000 only, and that the defendant should acquire it at an advance of $295,000 from Robineau, was illegal and void as against the public policy of Florida. Therefore, the contract in question, a component part of that transaction, was and is illegal and void.* The Supreme Court of Florida in no uncertain terms declared the illegality of the transaction and contract (*Robineau* v. *De Long, supra*) and affirmed the order of the Circuit Court directing the return of the money to the defendant (Id.), stating, however, in effect that the order affirmed in no manner denied or restricted Robineau from maintaining an action at law for whatever damages he might be entitled by reason of the alleged breach of contract by Penney — a statement which of course breathes no life into the (void) contract.

The learned counsel for plaintiff contends that said holding of

the Florida court (92 Fla. 418; 109 S. 636) is in the nature of *obiter dictum* — that its utterances condemning the transaction were unnecessary to the determination of the case before it and were gratuitous. I decide against that contention, however, and determine that the finding of illegality was pertinent to that inquiry, and that the said determination (of illegality) discloses the law of Florida to the effect that the public policy of that State was contravened by the said contract. It is manifest that if the transaction was illegal and said contract void, the $50,000 paid by the defendant to the receivers was his money received by them and in equity and good conscience returnable by the receivers to the defendant. (For principle read *Ball* v. *Shephard*, 202 N. Y. 247, 253.) Therefore, that ruling of the court was pertinent to the inquiry and not mere dictum. The greater weight of other competent evidence by way of lawyers' opinions as to the validity of the law warrants a finding which I make that this contract was illegal and contrary to said public policy. The contract for the breach of which this suit is brought is illegal and void on said grounds and is, therefore, unenforcible.

Other sound legal contentions urged by the defendant militate in a controlling way against plaintiff's success herein, but in the interest of brevity I do not discuss them. I am of the opinion that the determination about to be announced will be consonant with the justice of the case; certainly the assignor Robineau claimed, and his assignee the plaintiff claims, $295,000 under circumstances which would make its recovery by the plaintiff unjust enrichment. Robineau invested nothing except his ingenuity and ability to maneuver to his own benefit and to the detriment of those interested in the receivership. The plaintiff stands in Robineau's shoes.

In conformity with the stipulation (as to form of proceedings) in relation to the direction of a verdict as if the jury were present, the court directs the jury to find a verdict in favor of the defendant. Exception to plaintiff, thirty days' stay to plaintiff, sixty days to make and serve a case.